# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
Miami Division

**NIGHT BOX FILED**

CASE NO.:  03-21216-CIV-LENARD/SIMONTON

JUN 2 0 2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

BAPTIST HEALTH SOUTH FLORIDA, INC.
f/k/a BAPTIST HEALTH SYSTEMS OF
SOUTH FLORIDA, INC., a Florida non
profit corporation,

        Plaintiff,

vs.

SCPIE MANAGEMENT SERVICES, INC.,
a foreign profit corporation; SCPIE
INDEMNITY COMPANY, a foreign
corporation; SCPIE INSURANCE
SERVICES, INC., a foreign for profit
corporation;SCPIE MANAGEMENT
COMPANY, a foreign for profit
corporation; AMERICAN HEALTHCARE
INDEMNITY COMPANY, a foreign profit
corporation,

        Defendants.

_____/

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT WITH PREJUDICE

COMES NOW, the Plaintiff, BAPTIST HEALTH SOUTH FLORIDA, INC., f/k/a

BAPTIST HEALTH SYSTEMS OF SOUTH FLORIDA, INC. (hereinafter "Baptist"), a Florida

non profit corporation, by and through its undersigned counsel, hereby files its

Memorandum of Law in Opposition to Defendants, SCPIE MANAGEMENT SERVICES,

INC.; SCPIE INDEMNITY COMPANY; SCPIE INSURANCE SERVICES, INC.; SCPIE

MANAGEMENT COMPANY, INC.; and AMERICAN HEALTHCARE INDEMNITY

CASE NO.:03-21216-CIV-LENARD/SIMONTON

COMPANY's Motion to Dismiss Plaintiff's Complaint with Prejudice and states the following:

## FACTS

Plaintiff Baptist is a not-for profit health care organization that owns and operates hospitals, outpatient facilities and related health care services in Miami-Dade, Florida. On or about October 1, 1996, Defendants, through a fronting program set up and managed by Southern California Physicians Insurance Exchange ("SCPIE"), provided Baptist with comprehensive hospital liability insurance. Defendants entered into a fronting program with Reliance Insurance Company ("Reliance") on August 1, 1996, wherein Reliance issued direct policies to insureds on Reliance "paper" and then transferred or ceded some or all of the insured risk to the Defendants.

All aspects of the fronting program were handled by the Defendants. Apart from providing its paper, Reliance played no role in the fronting program. The marketing, underwriting of the business, collection of premiums, deliver of policies, administration of claims, defense of insureds and/or settlement of claims were all handled by the Defendants. Moreover, the reinsurance agreement between Reliance and Defendants indicates that Reliance ceded 100% of the insured risk, including liability for defense costs and even extra contractual liabilities such as bad faith damages, to a SCPIE subsidiary, American Health Indemnity Company ("American Healthcare").

From October 1, 1996, until sometime in October of 2001, Baptist had no contact with Reliance. Rather, Baptist dealt exclusively with Defendants. Premium payments were tendered directly to and accepted by Defendants in consideration for insurance coverage. The Defendants handled all claims relative to Baptist, and assumed the role and

CASE NO.:03-21216-CIV-LENARD/SIMONTON

correspondence to the Liquidator of Reliance was not seeking authorization from Reliance for the novation, but rather it was seeking "acquiescence" to facilitate the process. Thus, by entering into said agreement the Defendants legally assumed the position of direct insurer via novation, prior to the insolvency of Reliance.

In addition, during the early part of 2001 the Defendants had entered into a novation agreement, subject to an accounting reconciliation, directly with Reliance. This agreement stipulated that the Defendants would assume all obligations of Reliance under the "SCPIE Program" and Reliance would be released of its obligations. The Defendants acknowledged this novation in their November 14, 2001 correspondence to the Liquidator for Reliance wherein the terms of the novation were explained. The correspondence also confirmed that the Defendant SCPIE had continued to administer claims under the policies in accordance with its novation agreement. Moreover, attached to this correspondence was a list of all the policies written by Reliance under the SCPIE Program which were being assumed by the Defendants. The Plaintiff Baptist was clearly identified in this list along with its corresponding policy number under the SCPIE Program. *A copy of said correspondence is attached hereto as Exhibit "C".*

However, shortly after Reliance was declared insolvent the Defendants notified Baptist that they would no longer honor their obligations as Baptist's insurer, and ceased all previously performed coverage services. Conveniently, the Defendants have ignored the novation agreement and are now maintaining that despite acting as the Plaintiff's insurer for five years, they are the Reinsurance Company, and pursuant to Pennsylvania Statute 40 P.S. section 221.34 they are not obligated to the insured, Baptist. However, Defendants' past actions clearly illustrate that at all material times hereto, Defendants were

COLE, SCOTT & KISSANE, P.A.
PACIFIC NATIONAL BANK BUILDING · 1390 BRICKELL AVENUE · THIRD FLOOR · MIAMI, FLORIDA 33131 · (305) 350-5300 · (305)373-2294 FAX

CASE NO.:03-21216-CIV-LENARD/SIMONTON

the *defacto* insurance company of Baptist by and through Reliance insurance policy number NPB 1412190.

## STANDARD OF REVIEW FOR MOTION TO DISMISS

Rule (8)(a)(2) of the Federal Rules of Civil Procedure provides that a complaint need only be "a short and plain statement of claim," as long as the pleadings "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," the notice pleading requirement has been satisfied. Conley v. Gibson, 355 U.S. 41, 47 (1957). A court will not grant a motion to dismiss unless the plaintiff fails to prove any facts that would entitle the plaintiff to relief. Id. On a motion to dismiss, the court will construe a complaint in the light most favorable to the plaintiff and the allegations will be taken as true. Scheuer v. Rhodes, 416 U.S. 232 ( 1974); In Re Johannessen, 76 F.3d 347 (11th Cir. 1996); Harper v. Thomas, 988 F.2d 101, 103 (11th Cir. 1993). As the Eleventh Circuit has noted, "the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." Quality Foods v. Latin Am. Agribusiness Devel., 711 F.2d 989, 995 (11th Cir. 1983).

### A.   PRIVITY

### I.   Privity Pursuant to Article XVIII of Reinsurance Agreement and the Novation Agreement Between Parties.

The word "privity" is a term of art derived from the common law of contracts. It is commonly used to describe the relationship of persons who are parties to a contract. *See* 4 *Corbin on Contracts* §§ 772, at 2 (1951). The facts in the instant case clearly demonstrate that the Defendants and the Plaintiff Baptist entered into a novation agreement whereby the Defendants assumed the role of Reliance, becoming the direct insurer for Baptist. This novation agreement created a privity relationship between the

-5-

CASE NO.:03-21216-CIV-LENARD/SIMONTON

Defendants and Baptist.

The novation agreement between Baptist and the Defendants evolved from the Reinsurance Agreement. The Reinsurance Agreement contained twenty five articles stipulating the terms by which the parties were bound. Article XVII, entitled Insolvency, stated in relevant part:

> The reinsurance shall be payable by the Reinsurer to that Company or to its liquidator, receiver, conservator or statutory successor, except as provided by applicable Insurance Law, or except (a) where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of that Company, and **(b) where the Reinsurer with the consent of the direct insured or insureds have assumed such policy obligations of that Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of that company to such payees.**

(Emphasis added) ( *A copy of Reinsurance Agreement is attached hereto as Exhibit "A").*

The language of Article XVIII allows the reinsurer and the direct insured to enter into a separate and enforceable agreement, without the consent of the insurer, wherein the reinsurer would assume the position of the insurer and provide the relevant insurance coverage benefits directly to the insured.

The Defendants reiterated this interpretation of Article XVIII in a correspondence to the Statutory Liquidator of Reliance dated January 16, 2002. This correspondence not only confirmed the Defendants interpretation of the Article, but it also verified that the Defendants had exercised their rights under Article XVIII by entering into a novation agreement with Baptist. *A copy of said correspondence is attached hereto as Exhibit "B".*

Consequently, a contractual obligation was formed between the Defendants and Baptist creating a right of action. Pursuant to this contractual obligation, the Defendants continued to administer the claims under the Baptist policy, authorize settlements, collect premiums from Baptist as well as hire and communicate with defense counsel on behalf

-6-

CASE NO.:03-21216-CIV-LENARD/SIMONTON

of Baptist.

Any arguments made by the Defendants relative to the lack of proof or documentation evidencing the existence of a novation agreement between themselves and Baptist constitutes an issue of fact. The Rules of Civil Procedure have established that the appropriate pretrial procedure by which issues of facts should be addressed is through a motion for summary judgment, upon completion of adequate discovery, not by a motion to dismiss.

**II.      Baptist is a Third Party Beneficiary.**

Assuming arguendo there is no contractual privity, Baptist is still considered a third party beneficiary to the Reinsurance Agreement. As such, Baptist is entitled to file suit on this contract.

The general rule, absent provisions to the contrary, regarding distribution of reinsurance proceeds is that an ordinary contract of reinsurance operates solely as between reinsurer and reinsured. <u>McDonough Constr. Corp. v. Pan American Surety Co.</u>, 190 So.2d 617, 618-19 (Fla. 1st DCA 1966); <u>Security Mutual Casualty Co. v. Pacura</u>, 402 So.2d 1266, 1267 (Fla. 3d DCA, 1981). The established reinsurance law not only recognizes the difference between a typical reinsurance transactions and a fronting arrangement, but it also acknowledges that under certain circumstances, an insured, rather than its insurer may be entitled to reinsurance proceeds even in the absence of a cut-through provision.

In <u>Reid v. Ruffin</u>, 503 Pa. 458, 469 A.2d 1030 (1983), an injured claimant, Reid, brought suit against the reinsurer of the other driver Ruffin's insurance company for injuries sustained in a motor vehicle accident. The Superior Court held that there was a lack of

CASE NO.:03-21216-CIV-LENARD/SIMONTON

privity between the original insured and the reinsurer. The Supreme Court affirmed this

decision, but it recognized that such a direct action against a reinsurer might be sustained

if certain circumstances were present. The Court held that the reinsurer would have been

liable to the original insured had the reinsurer retained all contact with the original insured,

and handled all matters prior to and subsequent to the loss, such as maintain control over

settlement decisions. Id. at 462-65. The facts in the instant case clearly illustrate that at all

material times to this action the Defendants maintained exclusive control of and handled

all claims asserted against and on behalf of Baptist.

There are two basic types of reinsurance polices, assumption reinsurance and

indemnity reinsurance. In the case of assumption reinsurance, the reinsurer steps into the

shoes of the ceding company with respect to the reinsured policy, assuming all its liabilities

and its responsibility to maintain required reserves against potential claims. The

assumption reinsurer thereafter receives all premiums directly and becomes directly liable

to the holders of the policies it has reinsured.   Colonial American Life Ins. Co. v.

Commissioner, 491 U.S. 244, 247 (1989).

In contrast, within an indemnity insurance agreement it is the ceding company that

remains directly liable to its policyholders, and that continues to pay claims and collect

premiums. The indemnity reinsurer assumes no direct liability to the policyholders. Instead,

it agrees to indemnify, or reimburse, the ceding company for a specified percentage of the

claims and expenses attributable to the risks that have been reinsured, and the ceding

company turns over to it a like percentage of the premiums generated by the insurance of

those risks. However, reinsurance is so closely tied to the terms of the primary insurance

contract that one of the two categories of reinsurance (assumption reinsurance) substitutes

CASE NO.:03-21216-CIV-LENARD/SIMONTON

the reinsurer for the primary or "ceding" insurer and places the reinsurer into contractual privity with primary insurer's policy holders. Id at 247.

In the present case the reinsurance agreement between the Defendants and Reliance mirrors an assumption reinsurance as oppose to an indemnity agreement. Specifically, the Defendants assumed 100% of the risk for all SCPIE policies under Reliance as well as managed and administered same.  By stepping into the shoes of Reliance, the Defendants established another relationship,  which created a privity of contract between Defendants and  Baptist independently of the Defendants and Reliance.

Nonetheless, the Defendants have asserted that  Plaintiff Baptist lack  privity with the Defendants, and is therefore barred from filing the claims asserted in the Complaint. The lack of privity does not necessarily foreclose liability if a duty of care is otherwise established.  Baskerville-Donovan Engineers, Inc., v. Pensacola Executive House Condo. Assoc., Inc., 581 So.2d 1301 (Fla. 1991); First Florida Bank, N.A. v. Max Mitchell & Co., 558 So.2d 1167 (Fla.1990); First American Title Ins. Co. v. First Title Service Co., 457 So.2d 467 ( Fla. 1984). These Florida Supreme Court decisions relaxed the privity limitation on liability by expanding the class of persons who could bring a cause of action against a professional beyond those in strict contractual privity with the professional.

At early common law, only those in direct privity to a contract could sue on a contract. However, the doctrine of third party beneficiary modified the common law to allow suits upon a contract despite the absence of direct contractual privity under narrowly defined circumstance. Baskerville-Donovan Engineers, Inc., v. Pensacola Executive House Condo. Assoc., Inc., 581 So.2d 1301 (Fla. 1991).

To prevail under a third-party beneficiary theory, a plaintiff must prove that the

CASE NO.:03-21216-CIV-LENARD/SIMONTON

provisions of the reinsurance treaties "clearly show an *intention primarily and directly to benefit*" the plaintiff. <u>Clark and Company v. Department of Ins. As Receiver of Easter Ins. Co.</u>, 436 So.2d 1013 (Fla. 1st DCA 1983). Additionally, it must be shown that both parties to the reinsurance treaties intended that the claimant be directly benefitted.

Although the reinsurance contract at issue in this matter does not specifically document Baptist as a third party beneficiary, the actions undertaken by the Defendants, specifically the insurance coverage provided to Baptist, is evidence that Baptist was an intended/apparent beneficiary. Moreover, the Defendants have acknowledged that they "entered into a 'fronting' arrangement with Reliance Insurance Company..." *See Defendants' Memorandum of Law* in Support of Defendants' Motion to Dismiss Plaintiff's Complaint With Prejudice, pg 2. This 'fronting' arrangement involved Reliance ceding 100% of the insured risk, including liability for defense costs and extracontractual liabilities, to Defendants. In turn, the Defendants retained 100% of the premiums it collected and paid 100% of the claims. It is evident that these services were directed at and benefitted third parties, which include the Plaintiff Baptist.

Further, it is not necessary that the third-party beneficiary of the contract be specifically named; it is sufficient if beneficiary is a member of the limited class which was intended to benefit from the contract. <u>Technicable Video Systems, Inc. v. Americable of Greater Miami, Ltd.</u>, 479 So.2d 810 (Fla. 3rd DCA 1985). Thus, the third party beneficiary rule eliminates the need for privity and permits the beneficiary, Baptist, to maintain an action for breach of contract.

In addition to the doctrine of third party beneficiary, there are three exemplar cut-through provisions, each of which creates a direct coverage obligation between the insured

CASE NO.:03-21216-CIV-LENARD/SIMONTON

and the reinsurer. These exceptions are "(1) Where the reinsurer binds itself to the terms of the original contract; (2) where the reinsurer binds itself to assume complete liability for the original policies; and (3) where, by special agreement between the original insured and its insurer, reinsurance is made a condition of the original policy." See Clark, 436 So.2d 1015.

The Reinsurance Agreement at issue falls under the first exception; reinsurer binds itself to the terms of the original contract. This exception was illustrated in Mitchell v. State ex rel. Williams, 223 So.2d 792 (Fla. 1st DCA 1969), where an insured asserted priority to certain reinsurance proceeds received by the insurer which had been ordered into receivership. Upon recognizing the above mentioned exception as valid, the Court deemed provisions containing language such as "subject to the same risks, valuations, endorsements, (except changes of location), assignments and conditions as the Original Insurance, and loss if any to be settled and paid pro rata with the reinsured and at the same time and place and upon the same terms and conditions" or "[s]ubject to all the terms, clauses, and conditions of the policy" as express language of the reinsurance agreement binding the reinsurer to the terms and conditions of the original contract. Id. at 794.

The facts in the instant case mirror those of Mitchell v. Williams, as the Reinsurance Agreement between the Defendants and Reliance stipulate that "the reinsurance coverage of this Agreement shall be subject to the same terms, limits, conditions, and endorsements of Company's [Reliance] *original* policies and to all interpretations, modifications, waivers, and alterations thereto." (*Emphasis added*) *See copy of Reinsurance Agreement between Reliance National and American Healthcare Indemnity Company attached hereto as*

-11-

CASE NO.:03-21216-CIV-LENARD/SIMONTON

*Exhibit "B".*

## B.   COMPLIANCE WITH ORDER APPROVING GUIDELINES REGARDING THE DIRECT PAYMENT OF REINSURANCE PROCEEDS PURSUANT TO 40 P.S§221.34

On April 26, 2002 the Pennsylvania Court approved the Liquidator for Reliance's Petition to Approve Guidelines Regarding the Direct Payment of Reinsurance Proceeds Pursuant to 40 P.S. §221.34.  The Guidelines as drafted by the Liquidator impose five basic requirements for cut-throughs:(1) the reinsurance contract must provide for payment to an individual named insured and that insured must be identified with particularity either by name or policy number in the reinsurance contract; (2) the reinsurance contract must provide for a direct coverage obligation by the reinsurer to the insured and the payment must be made in satisfaction of that coverage obligation; (3) the payment by the reinsurer must release the estate from all liability to the insured for claims covered by the reinsurer's direct coverage obligation to the insured; (4) the insured and reinsured must comply with all other relevant contractual provisions; and (5) the reinsurer must obtain the insured's informed consent to direct payment and the insured's consent to release all claims against Reliance relating to coverage assumed by the reinsurer. Evidence of compliance with criteria number (5) may be established by the submission of a form approved by the court.

The Defendants contend that the conditions set forth in the approved Guidelines were not met and can never be met by Defendants. Therefore, based on the principle of comity, the Florida court should determine that the April 26, 2002 Order created a judicial determination that an incurable defect existed which precludes any "cut through" action. However, the Defendants and the Plaintiff have met the relevant conditions of the Guidelines, specifically criteria numbers (2),(3), and (5).

CASE NO.:03-21216-CIV-LENARD/SIMONTON

Article XVIII of the Reinsurance Agreement allows the Reinsurer to assume the direct coverage obligations of the reinsured upon the consent of the direct insured. The facts of this case illustrate that acting in compliance with this Article XVIII the Defendants in agreement with Baptist assumed the position of the insurer and provided the necessary insurance coverage services for Baptist. In exchange Baptist tendered all policy proceeds directly to the Defendants. Thus, the agreement between the Defendants and Baptist satisfies criteria number (2) of the Guidelines, allowing for direct repayment of reinsurance proceeds.

In addition, in the present case the insurer, Reliance, was released from all liability to the insured Baptist per the novation agreement entered into by the Defendants and Reliance in the early part of 2001. This release was confirmed in the November 14, 2001 correspondence from the Defendants to the Liquidator for Reliance wherein the terms of said novation were explained and confirmed. *A copy said correspondence is attached hereto as Exhibit "C".* Thus, the parties to the present suit have satisfied Guideline criteria number (3) which states: the payment by the reinsurer must release the estate from all liability to the insured for claims covered by the reinsurer's direct coverage obligation to the insured. As such, Baptist's "cut-through" action is not precluded by the Guidelines, and the Plaintiff is entitled to direct payment of reinsurance proceeds.

Permitting the Defendants to now conveniently hold themselves out solely as a reinsurer and abstain from performing and/or fulfilling their previously undertaken duties, will unduly prejudice the interests of insureds and the general public. The Reinsurance Agreement at issue should not be the sole factor when determining the Defendants true intentions. Rather, the Defendants consistent and blatant actions over the past five years

-13-

CASE NO.:03-21216-CIV-LENARD/SIMONTON

should play a significant role in determining whether the Defendants were only acting in the capacity of a reinsurer.

### C.   FRAUD AND ESTOPPEL

The Complaint at issue sounds in five counts: (1) Breach of Contract; (2) Breach of Implied Warranty of Authority; (3) Declaratory Relief; (4) Fraud; and (5)Estoppel. Each claim is a separate cause of action.  Defendant has filed its motion to dismiss all counts of Plaintiff's Complaint.  However, the Defendants have failed to assert the grounds upon which the Fraud (Count IV) and Estoppel (Count V) claims should be dismissed.  The counts for Fraud and Estoppel are extra-contractual in nature, and are not based on Plaintiff's ability to recover or receive direct payment pursuant to the Reinsurance Agreement.  Common Law fraud is a tort action, the elements of which are different from those of breach of contract. See Gandy v. Trans World Computer Technology Group, 787 So.2d 116 (Fla. 2d DCA 2001).  Likewise, estoppel is an extra-contractual remedy brought about by a promise made by the promisor which creates a reasonable expectation or forbearance on the part of the promisee or a third party, which results in an inequity or injustice that can only be avoided by enforcement of the promise. See W.R. Grace & Company v. Geodata Services, Inc., 547 So.2d 919, 924 (Fla. 1989).  In its Complaint, Plaintiff had rightfully pled the necessary elements to establish Fraud and Estoppel.

### CONCLUSION

Based on the four corners of the Complaint, Baptist has stated a cause of action for Breach of Contract, Breach of Implied Warranty of Authority, Declaratory Relief, Fraud, and Estoppel. Therefore, Defendants' Motion to Dismiss should be denied.

CASE NO.:03-21216-CIV-LENARD/SIMONTON

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and accurate copy of the foregoing was served via Facsimile and U.S. Mail to Matthew L. Litsky, Esquire, PHELPS DUNBAR LLP, 100 South Ashley Drive, Suite 1900, Tampa, Florida 33602-5311 on this _20th_ day of June, 2003.

COLE, SCOTT & KISSANE, P.A.
Counsel for Defendant
Pacific National Bank Building
1390 Brickell Avenue, Third Floor
Miami, Florida 33131
Email: cole@csklegal.com
Telephone: (305) 350-5305
Facsimile: (305) 373-2294

By:_____
RICHARD P. COLE
FBN: 186589

L:\2130-0055-00\P\RESPONSE TO DEF'S MTD.wpd



# RELIANCE NATIONAL

1996
AUTOMATIC FACULTATIVE
QUOTA SHARE
REINSURANCE AGREEMENT

between

Reliance Insurance Company

Reliance Nacional Compania Argentina de Seguros, S.A.,
Reliance National (Barbados) Insurance, Ltd,.
Reliance National Insurance Company (U.K.) Ltd.,
Regent International Insurance Company, Ltd.,
Seguros Renamex, S.A.,
Reliance Surety Company

("Company")

and

American Healthcare Indemnity Company
(formerly named F G Insurance Corporation)
("Reinsurer")

Effective:     August 1, 1996

1

**EXHIBIT 1**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| ARTICLE I. | DEFINITIONS | 4 |
| ARTICLE II. | REINSURANCE COVERAGE | 5 |
| ARTICLE III. | POOLING ARRANGEMENT | 5 |
| ARTICLE IV. | EXCLUSIONS | 6 |
| ARTICLE V. | TERM AND TERMINATION | 6 |
| ARTICLE VI. | REINSURANCE PREMIUM | 6 |
| ARTICLE VII. | CEDING COMMISSION | 6 |
| ARTICLE VIII. | SPECIAL PROVISION | 7 |
| ARTICLE IX. | REPORTS AND REMITTANCES | 7 |
| ARTICLE X. | OFFSET | 7 |
| ARTICLE XI. | NOTICE OF LOSS | 8 |
| ARTICLE XII. | LOSS SETTLEMENTS | 8 |
| ARTICLE XIII. | TAXES | 8 |
| ARTICLE XIV. | CURRENCY | 9 |
| ARTICLE XV. | THIRD PARTY BENEFICIARY | 9 |
| ARTICLE XVI. | ERRORS AND OMISSIONS | 9 |
| ARTICLE XVII. | ACCESS TO RECORDS | 9 |
| ARTICLE XVIII. | INSOLVENCY | 10 |
| ARTICLE XIX. | SECURITY AND UNAUTHORIZED REINSURANCE | 11 |
| ARTICLE XX. | SERVICE OF SUIT | 14 |

2

ARTICLE XXI.      ARBITRATION.................................................................... 15

ARTICLE XXII.     AGENCY AGREEMENT ...................................................... 17

ARTICLE XXIII.    SALVAGE AND SUBROGATION ....................................... 17

ARTICLE XXIV.    OTHER TERMS AND CONDITIONS ................................. 18

ARTICLE XXV.     INTERMEDIARY .............................................................. 19

ARTICLE I.  DEFINITIONS

A.      "Allocated loss expense" means all expenses (except for salaries, benefits and traveling expenses of the Company's directors, officers, or employees office expenses, overhead or other fixed expenses of Company) relating to the adjustment of claims on business covered including appellate expenses, monitoring expenses, and expenses and fees associated with policy coverage and declaratory judgment actions, prejudgment and postjudgment interest, and legal expenses and costs associated with extra-contractual obligations and loss in excess of policy limits.

B.      "Business Covered" means all new and renewal business with an effective date ("attaching") during the Term of this Agreement with policy limits not in excess of five hundred thousand dollars ($500,000) each occurrence that are written through the Health Care Division of the Reliance National division of Company in which SCPIE Management Services, Inc. ("SMS"), is acting as program manager.

C.      "Gross Net Written Premium" means gross written premiums received by Company on "subject policies", less returns and refunds thereon, less producer and broker commissions, less premiums paid or payable for reinsurance, recoveries under which would inure to the benefit of Reinsurer under this Agreement.

D.      "Occurrence" and "Accident" shall have the same meaning as defined in the Company's original policies.  The date of a loss shall be as determined by Company.

E.      "Policy year" means separate subject original policy periods not exceeding fourteen (14) months plus odd time as from inception, anniversary or renewal date (and as respects claims made or losses discovered business, shall include any run-off provision or any extended reporting period option or any discovery period contained in the subject original policy).

F.      "Second Generation Loss" means and includes, but is not limited to, all liability relating to a subject policy, including all liability of the Insured as Self Insurer, and/or an underlying Insurer, and/or Company and/or a third party administrator for damages, including settlement payments, based on or related to the manner in which Insured as Self Insurer, and/or the underlying Insurer, and/or Company and/or third party administrators have administered, processed, handled, adjusted, litigated, defended, resolved or settled, or have failed to administer, process, handle, adjust, litigate, defend, resolve or settle any claims or suits asserted by or against any person or entity insured; such phase specifically includes, without limitation, all compensatory and punitive damages imposed against Insured as Self Insurer, and/or an underlying Insurer, and/or Company and/or a third party administrator as a result of any actual or alleged failure to properly defend, litigate, settle or otherwise administer any such claim or suit, any actual or alleged bad faith or breaches of fiduciary duty, any actual or alleged unfair claim practices, any other actual or alleged unlawful, negligent, fraudulent or other tortious acts, omissions, or decisions related to the administration, processing, handling, adjustment, litigation, defense,

4

Initials:  RIC: _____  AHIC _____

resolution or settlement of any such claim or suit, or any other acts, omission or decisions related to the defense or trial of any action by or against an Insured or to the preparation or defense of any appeal consequent upon such action.  The date of the Second Generation Loss shall be deemed to be the same date as the original claim or loss.

G.      "Subject policy" means any policy that is Business Covered.

H.      "Ultimate net loss" means 100% of the amounts paid or payable in defense and/or settlement of loss or liability under Company's policies.

ARTICLE II.  REINSURANCE COVERAGE.

With respect to Business Covered, Company shall cede and Reinsurer shall accept 100% of the Company's "ultimate net loss" each and every loss, each and every subject policy.

In addition to the coverage provided in the preceding paragraph, any claim or loss that arises out of an award in respect of a Second Generation Loss related to Business Covered shall be treated as a separate claim or loss and the Reinsurer shall be liable to and reimburse Company for 100% of the amount of the Second Generation Loss plus the associated allocated loss adjustment expenses.

Except as expressly provided otherwise in this Agreement, the reinsurance coverage of this Agreement shall be subject to the same terms, limits, conditions, and endorsements of Company's original policies and to all interpretations, modifications, waivers, and alterations thereto.

Any additional companies established or acquired by Company shall be automatically covered under this Agreement.

ARTICLE III.  POOLING ARRANGEMENT

Reliance Insurance Company of Illinois assumes 100% of the liability of Reliance Lloyds after deductions for facultative reinsurance.  Reliance Insurance Company assumes 100% of the liability of Reliance National Indemnity Company, Reliance Insurance Company of California, Reliance Insurance Company of Illinois, Reliance National Insurance Company and United Pacific Insurance Company after deductions for facultative reinsurance and ceded captive reinsurance programs.  Notwithstanding any other provisions of this Agreement, this Agreement protects such assumed reinsurance liability as if it were written directly by Reliance Insurance Company and attaches prior to redistribution to those companies under the terms of Company's intercompany reinsurance pool, which redistribution will be disregarded for all purposes hereunder.   In the event that this Agreement applies on a per risk basis, and a single occurrence affects two or more of the pooling companies named above under different policies, the Company will continue to maintain a separate retention and separate limit for each risk as if the policies were written by separate companies.

5

Initials:   RIC: _____   AHIC _____

## ARTICLE IV.   EXCLUSIONS.

This Agreement does not apply to any account whose primary business is not in the health care field.

## ARTICLE V.   TERM AND TERMINATION.

This Agreement shall commence at 12:01 A.M. Standard Time August 1, 1996, at the location of the risk and shall continue until terminated on at least ninety (90) days prior written notice of cancellation by either party to the other.

In the event of termination, reinsurance coverage shall remain in force and Reinsurer shall remain liable to Company for all losses, including losses with a date of loss after the date of termination of this Agreement, on all business covered in force at the date of termination until their natural expiration plus odd time and/or any run-off provision or any, extended reporting period option or any discovery period contained in the subject original policies.

However, should any business covered to which this Agreement applies be extended, continued or renewed due to regulatory, or other legal restrictions, this Agreement shall automatically continue to provide Reinsurance coverage until that business covered is actually terminated by Company.

Alternatively, if mutually agreed between Company and Reinsurer, coverage under this Agreement may be terminated by "cut-off" as respects business covered in force as of the date of termination and in that event Reinsurer shall not be responsible to Company for losses or any portion thereof with a date of loss on or after the termination date and Reinsurer will return, within thirty (30) days of Company's notice, the unearned reinsurance premium reserve in respect of the business covered and U.S. currency in that amount net of any applicable ceding commission thereon.  In the event this clause is applicable and a loss covered under this Agreement has commenced, the entire loss covered under the policy to which this Agreement originally attached shall be covered under this Agreement regardless of the number of dates of loss that may be involved with that occurrence/accident.

## ARTICLE VI.   REINSURANCE PREMIUM

As reinsurance premium, Company shall pay Reinsurer 100% of Company's Gross Net Written Premium actually received by Company on Business Covered.

## ARTICLE VII.   CEDING COMMISSION

Reinsurer shall allow Company a ceding commission equal to any applicable brokerage commission plus five percent (5%) of the Reinsurance Premium payable under this Agreement

6

Initials:   RIC: _____   AHIC _____

plus 100% of assessments from guarantee funds, insolvency funds and any other type of assessment imposed on Company associated with the business covered hereunder.

## ARTICLE VIII.   SPECIAL PROVISION.

This Agreement shall apply prior to the deduction of any Catastrophe Excess of Loss reinsurance.

## ARTICLE IX.   REPORTS AND REMITTANCES

Company shall furnish a bordereau to Reinsurer on formats mutually acceptable indicating as respects each subject policy:

a)      Insured's name;
b)      Policy number;
c)      Effective date and term;
d)      Limit of liability;
e)      Policy premium;
f)       Premium applicable to this reinsurance including additional and return or refund premiums,

and an account summarizing reinsurance premium ceded under this Agreement, return and refund premium, ceding commission allowed, paid "ultimate net loss", and the net balance. Responsibility for preparation of the bordereau is with, SCPIE Management Services, Inc., a third party not subject to this agreement. Company shall make a good-faith effort to furnish bordereau to Reinsurer upon receipt.

Company shall promptly remit premium to Reinsurer as soon as possible after receipt of said premium. In any case, Company will make a good-faith effort to remit subject premium within fourteen (14) days of receipt, subject to completeness and accuracy of bordereau received from preparer.

## ARTICLE X.   OFFSET.

All amounts due either Company or Reinsurer, whether by reason of premium, commission, loss, ultimate net loss or allocated loss expense, or otherwise, under this Agreement or any other Agreement previously, now or later in force between Reinsurer and Company, whether as ceding company, reinsurer or otherwise, shall be subject to the right of recoupment and offset and upon the exercise of the same, only the net balance shall be due. All claims for amounts of premium, commission, loss, ultimate net loss or allocated loss expense, whether or not fixed in amount at the time of the insolvency of any party to this Agreement, arising from coverage placed in effect under this Agreement prior to the insolvency of any party to this Agreement shall be deemed pre-liquidation debts and subject to this Article.   In the event of insolvency of Company, offset shall be in accord with applicable law.

7

ARTICLE XI.  NOTICE OF LOSS

Company shall furnish a loss bordereau on formats mutually acceptable indicating as respects each loss:

a)    Insured's name;
b)    Policy number;
c)    Claimant's name;
d)    Date of Loss;
e)    Outstanding Loss and LAE reserve;
f)    Paid Loss and LAE;
g)    Total Incurred Loss and LAE;

Responsibility for preparation of loss bordereau is with SCPIE Management Services, Inc., a third party not subject to this agreement.  Upon receipt, Company shall endeavor to furnish Reinsurer with a copy as soon as possible.  When requested, Company will afford Reinsurer the opportunity to be associated with Company at the sole expense of Reinsurer in the defense of any claim or suit or proceeding and Company and Reinsurer shall cooperate in every respect in the defense of such claim, suit, or proceeding.

ARTICLE XII.  LOSS SETTLEMENTS.

All loss settlements made by Company or its third party administrator, whether under the policy terms and conditions or by way of compromise shall be unconditionally binding upon Reinsurer.  Except as noted, loss settlements shall be payable through the monthly accounts. When the amount of loss and loss adjustment expense incurred as a result of a single occurrence is $100,000 or more , at the option and demand of Company, the Reinsurer shall pay its share of such claim by special remittance within five days of Company's request.

ARTICLE XIII.  TAXES.

Company shall not claim any deduction of the premium under this Agreement when making tax returns other than Income or Profits Tax returns to any State, Territory, or Possession of the United States or the District of Columbia.

Furthermore, Reinsurer shall allow, for the purpose of paying the Federal Excise Tax, the applicable percentage of the Reinsurance premium payable under this Agreement (as imposed under Section 4371 of the Internal Revenue Code) to the extent that the reinsurance premium is subject to the Federal Excise Tax.

In the event of any return premium becoming due from the Reinsurer under this Agreement, Reinsurer shall deduct the applicable percentage from the return premium payable and Company or its agent shall take steps to recover the tax from the United States Government.

Initials:  RIC: _____  AHIC _____

## ARTICLE XIV.   CURRENCY.

All settlements of account between Company and Reinsurer shall be made in cash or its equivalent.  Wherever the word "Dollars" and the sign "$" shall appear in or in connection with this Agreement, they shall be construed to mean United States Dollars unless clearly indicated to the contrary.

In the event of Company being involved in an ultimate net loss requiring payment in two currencies, the amount recoverable under this Agreement shall be apportioned to the two currencies in the same proportion as the amount of ultimate net loss in each currency bears to the total amount of ultimate net loss paid by Company.

For the purposes of this Agreement, where Company should receive premium or pay ultimate net loss in currencies other than United States currency, those premiums and ultimate net loss shall be converted into United States Dollars at the actual rates of exchange at which these premiums and ultimate net losses are entered on Company's books.

## ARTICLE XV.   THIRD PARTY BENEFICIARY.

Except as expressly provided for in the Article entitled Insolvency, the provisions of this Agreement are intended solely for the benefit of Company and Reinsurer.  Nothing in this Agreement shall in any manner create or be construed to create any obligations to or establish any rights against any party to this Agreement in favor of any other persons not party to this Agreement.

## ARTICLE XVI.   ERRORS AND OMISSIONS.

Any inadvertent act, neglect, delay, omission, or error by either party to this Agreement, or by its representatives shall not be held to relieve either party to this Agreement from any liability that would attach to it under this Agreement if that act, neglect, delay, omission, or error had not been made, providing that act, neglect, delay, omission, or error is sought to be rectified after discovery.

## ARTICLE XVII.   ACCESS TO RECORDS.

Reinsurer shall have the right at any reasonable time upon five (5) working days prior notice during or at any time after the expiration of this Agreement, and as frequently as deemed reasonably necessary by Reinsurer, to visit the offices of Company to inspect, examine, audit, and verify any of the policy or claim files ("records") relating to the business reinsured under this Agreement.  Reinsurer shall have the right to make copies, at its own expense, or extracts of any records.  Notwithstanding the above, Reinsurer shall not have any right of access to the records of Company if it is not current in all payments due to Company and Company shall have no right to reimbursement under this Agreement if it fails or refuses to provide the access required by this

9

section other than by reason of Reinsurer's failure to pay. Reinsurer shall keep confidential all information and reports derived from the records of Company to which it has received access and shall not publish or communicate that information or report(s) to any other person or reinsurer without Company's express prior written consent. Reinsurer shall promptly upon Company's request deliver a complete copy of any report(s) concerning the records and information to which it has received access.

## ARTICLE XVIII.  INSOLVENCY.

In the event of the insolvency of one (or more) of the reinsured companies, this reinsurance shall be payable immediately upon demand directly to the insolvent Company, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of that Company without diminution because of the insolvency of that Company or because the liquidator, receiver, conservator or statutory successor of that Company has failed to pay all or a portion of any claim.

The liquidator, receiver, conservator or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against that Company indicating the policy or bond reinsured which claim would involve a possible liability on the part of that Reinsurer within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated any defense or defenses that they may deem available to the Company or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurer shall be chargeable, such to the approval of the court, against that Company as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to that Company solely as a result of the defense undertaken by the Reinsurer.

Where two or more Reinsurers are involved in the same claim and a majority in interest elect to interpose defense to such claim, the expense shall be apportioned in accordance with the terms of the reinsurance Agreement as though such expense had been incurred by that Company.

The reinsurance shall be payable by the Reinsurer to that Company or to its liquidator, receiver, conservator or statutory successor, except as provided by applicable Insurance Law, or except (a) where the Agreement specifically provides another payee of such reinsurance in the event of the insolvency of that Company, and (b) where the Reinsurer with the consent of the direct insured or insureds have assumed such policy obligations of that Company as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of that Company to such payees. Prior to the implementation of a novation, any assumption certificates on New York risks must be approved in advance by the Superintendent of Insurance for New York.

10

Initials:  RIC: _____  AHIC _____

ARTICLE XIX.   SECURITY AND UNAUTHORIZED REINSURANCE.

A.    If Reinsurer is unauthorized or otherwise unqualified in any state or other United States jurisdiction, and if, without such security, a financial penalty to Company would result on any statement or report it is required to make or file with regulatory authorities, for reasons of Company's financial security and condition, that Reinsurer will secure, at the inception hereof and within thirty (30) days after the end of each calendar quarter (but no later than December 31 of each year as respects the fourth quarter), its share of "obligations" under this Agreement in a manner, form and amount acceptable to Company and to all applicable regulatory authorities by either:

1.    Clean, irrevocable, and unconditional evergreen letter(s) of Credit issued and confirmed, if confirmation is required by the applicable insurance regulatory authorities, by a bank or banks meeting the NAIC Securities Valuation Office credit standards for issuers of letters of credit and acceptable to Company and those insurance regulatory authorities;

2.    A trust fund meeting at least the standards of New York's Insurance Regulation 114.

3.    Cash advances or funds withheld or a combination of both ("deposit of funds").

The initial amount of this security shall be delivered to Company no later than the effective date of this Agreement.  If Reinsurer fails to provide the security as required by this paragraph by the first December 15 following the effective date of this Agreement, or any anniversary thereof, Reinsurer will secure its obligations under this Agreement at a time, in a manner and form from among the above three options, and in an amount, all as designated by and acceptable to Company in its sole discretion and to insurance regulatory authorities.

B.  The "obligations" referred to herein shall mean the then current (as of the end of each calendar quarter) sum of:

1.    The amount of ceded unearned premium for which Reinsurer is responsible;

2.    The amount of paid losses and allocated loss adjustment expenses paid by Company for which Reinsurer is responsible but not yet recovered from the Reinsurer;

3.    The amount of ceded reserves for losses reported and outstanding, as well as for reserves for allocated loss adjustment expenses, for which Reinsurer is responsible;

4.    The amount of ceded reserves for the development of losses reported and outstanding, as well as for the development of allocated loss adjustment expenses, for which Reinsurer is responsible;

11

Initials:   RIC: _____   AHIC _____

5.      The amount of ceded reserves for incurred but not reported losses for which Reinsurer is responsible; and

6.      The amount of return and refund premiums for which Reinsurer is responsible but not yet recovered from Reinsurer.

C.  If any Reinsurer is unauthorized in any province or jurisdiction of Canada, that Reinsurer agrees to fund one hundred fifteen percent (115%) of its share of Company's ceded Canadian unearned premium and outstanding loss and loss adjustment expense reserves (including incurred but not reported loss reserves) by cash advances, if, without such funding, a penalty would accrue to Company on any financial statement it is required to file with the insurance regulatory authorities involved.

D.  Company, or its successors in interest may draw, at any time and from time to time upon the:

1.      established letter of credit (or subsequent cash deposit);

2.      established trust fund (or subsequent cash deposit); or

3.      deposit of funds;

without diminution or restriction because of the insolvency of either Company or Reinsurer for one or more of the following purposes:

a.      To make payment to and reimburse Company for Reinsurer's share of paid loss and allocated loss adjustment expense paid by Company under its "subject policies" and for which Reinsurer is responsible under this Agreement that is due to Company but unpaid by Reinsurer;

b.      To make payments to Reinsurer of any amounts held thereby that exceed the amount required to fund Reinsurer's "obligations" under this Agreement provided that if a trust fund is applicable, only the excess of one hundred two (102%) percent of the amount required to fund Reinsurer's "obligations" may be released.

c.      To make payment to and reimburse Company for other amounts due Company under this Agreement from Reinsurer including but not limited to Reinsurer's share of premium refunds and returns; and

d.      To obtain a cash deposit of the entire amount of the remaining balance under the established letter of credit or established trust fund ("cash deposit") in the event that Company:

12

Initials:  RIC: _____  AHIC _____

(i)  has received notice of non-renewal or expiration of the letter of credit of trust fund;

(ii)  has not received assurances satisfactory to Company of any required increase in the amount of the trust fund or letter of credit, or its replacement or other continuation of the letter of credit at least thirty (30) days before its stated expiration date;

(iii)  has been made aware that others may attempt to attach or otherwise place in jeopardy the security represented by the letter of credit or trust fund; or

(iv)  has concluded that the trustee or issuing (or confirming) bank's financial condition is such that the security represented by the trust fund or letter of credit may be in jeopardy;

and under any of those circumstances where Reinsurer's entire "obligations" or part thereof, under this Agreement remain unliquidated and undischarged at least thirty (30) days prior to the stated expiration date or at the time Company learns of the possible jeopardy to the security represented by the letter of credit or trust fund.

E.  If Company draws on the letter of credit or trust fund to obtain a cash deposit, Company shall hold the amount of the cash deposit so obtained in the name of Company in any solvent United States Bank or Trust Company that is a member of the Federal Reserve System and insured by the Federal Deposit Insurance Corporation in trust solely to secure the "obligations" referred to above and for the use and purposes enumerated above and to return any balance thereof to Reinsurer:

(1)   upon the complete and final liquidation and discharge of all of Reinsurer's obligations to Company under this Agreement; or

(2)   in the event Reinsurer subsequently provides alternate or replacement security consistent with the terms hereof and acceptable to Company.

F.  Company will prepare and forward at least quarterly to Reinsurer a statement for the purposes of this Article, showing Reinsurer's share of "obligations" as set forth above. If Reinsurer's share thereof exceeds the then existing balance of the security provided, Reinsurer shall, within fifteen (15) days of receipt of Company's statement, but never later than December 31 of any year, increase the amount of the deposit of funds, the trust fund, the letter of credit, or the cash deposit to the required amount of Reinsurer's share of "obligations" set forth in Company's statement.

Subject to the one hundred two (102%) percent restraints with respect to trust funds, if Reinsurer's share thereof is less than the then existing balance of the deposit of funds, trust

Initials:  RIC: _____   AHIC _____

account, letter of credit, or cash deposit as provided for above, Company will release the excess thereof to Reinsurer upon Reinsurer's written request.

G.  Reinsurer shall not attempt to prevent Company from holding the deposit of funds, drawing on the letter of credit or trust fund or holding the cash deposit so long as Company is acting in accordance with this Article.

H.  The assets deposited in the trust fund shall be valued according to their current fair market value and shall consist only of cash (U.S. legal tender), certificates of deposit issued by a United States Bank and payable in cash, and investments of the types specified in Section 1404 (a)(1)(2)(13) of the New York Insurance Law.  Investments issued by the parent, subsidiary, or affiliate of either Company or Reinsurer shall not be eligible investments.  All assets so deposited shall be accompanied by all necessary assignments, endorsements in blank, or transfer of legal title to the trustee in order the Company may negotiate any such assets without the requirement of consent or signature from reinsurer or any other entity.

I.  All settlements of account between Company and Reinsurer shall be made in cash or its equivalent.

J.  Company's "successors in interest" shall include those by operation of law, including without limitation, any liquidator, rehabilitator, receiver, or conservator.

K.  Any income earned and received by the amount held in a trust fund shall be added to the principal thereof.

L.  Reinsurer will take any other reasonable steps that may be required for Company to take full credit on its statutory financial statements for the reinsurance provided by this Agreement.

M.  Company may apply the Canadian cash advances under paragraph C above to satisfy Reinsurer's obligations to Company in the same fashion as if it were drawing on the letter of credit (or subsequent cash deposit), trust accounts or deposit of funds.

ARTICLE XX.  SERVICE OF SUIT.

(This Article applies only to those Reinsurers that are domiciled outside the United States of America,  and this article also applies to those Reinsurers that are unauthorized in New York with respect to suits instituted in New York.)

In the event of a dispute arising out of or in connection with this Agreement, or Reinsurer fails to pay any amount claimed to be due under this Agreement, at the request of Company, Reinsurer will submit to the jurisdiction of a Court of competent jurisdiction within the Commonwealth of Pennsylvania, comply with all requirements necessary to that court's jurisdiction, and all matters arising under this Agreement shall be determined in accordance with

Initials:  RIC: ___  AHIC ___

the law and practice of that court and jurisdiction. Nothing in this Article constitutes a waiver of Company's or Reinsurer's rights to commence an action in any Court of competent jurisdiction in the United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Service of process in such suit may be made upon the firm of SCPIE Management Services, Inc. ("Firm"), and in any suit instituted, the Reinsurer will abide by the final decision of such court or of any appellate court in the event of an appeal.

The Firm is here by expressly authorized and directed by Reinsurer as its true and lawful attorney to accept service of process of suit on behalf of Reinsurer in any suit by Company and, upon the request of Company, to give a written undertaking to Company to enter a general appearance upon behalf of the Reinsurer in the event a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provisions therefor, Reinsurer hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of Company or any beneficiary hereunder arising out of this agreement of reinsurance, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## ARTICLE XXI.   ARBITRATION.

Any and all disputes between Company and Reinsurer arising out of, relating to, or concerning this Agreement, whether sounding in agreement or tort and whether arising during or after termination of this Agreement, shall be submitted to the decision of a board of arbitration composed of two arbitrators and an umpire ("Board") meeting at a site in Philadelphia, Pennsylvania. The arbitration shall be conducted under the Federal Arbitration Act and shall proceed as follows:

(A) Submission to Arbitration. A notice requesting arbitration, or any other notice made in connection therewith, shall be in writing and shall be sent certified or registered mail, return receipt requested to the affected parties. The notice requesting arbitration shall state in particulars all issues to be resolved in the view of the claimant, shall appoint the arbitrator selected by the claimant and shall set a tentative date for the hearing, which date shall be no sooner than ninety (90) days and no later than one hundred fifty (150) days from the date that the notice requesting arbitration is mailed. Within thirty (30) days of receipt of claimant's notice, the respondent shall notify claimant of any additional issues to be resolved in the arbitration and of the name of its appointed arbitrator.

(B) Arbitration Board Membership. Unless otherwise mutually agreed, the members of the Board shall be impartial and disinterested and shall be active or retired lawyers, familiar with insurance and reinsurance, or active or retired officers of property-casualty insurance companies,

15

Initials:  RIC: _____   AHIC _____

reinsurance companies, or Lloyds Underwriters. Company and Reinsurer as aforesaid shall each appoint an arbitrator and the two (2) arbitrators shall choose an umpire before instituting the hearing. As time is of the essence, if the respondent fails to appoint its arbitrator within thirty (30) days after having received claimant's written request for arbitration, the claimant is authorized to and shall appoint the second arbitrator. If the two arbitrators fail to agree upon the appointment of an umpire within thirty (30) days after notification of the appointment of the second arbitrator, within ten (10) days thereof, the two (2) arbitrators shall request the American Arbitration Association ("AAA") to appoint an umpire for the arbitration with the qualifications set forth above in this Article. If the AAA fails to name an umpire, either party may apply to the court named below to appoint an umpire with the above required qualifications. The umpire shall promptly notify in writing all parties to the arbitration of his selection and of the scheduled date for the hearing. Upon resignation or death of any member of the Board, a replacement shall be appointed in the same fashion as the resigning or deceased member was appointed.

(C) <u>Submission of Briefs</u>. The claimant and respondent shall each submit initial briefs to the Board outlining the issues in dispute and the basis, authority, and reasons for their respective positions within thirty (30) days of the date of notice of appointment of the umpire. The claimant and the respondent may submit reply briefs to the Board within ten (10) days after filing of the initial brief(s). Initial and reply briefs may be amended by the submitting party at any time, but not later than ten (10) days prior to the date of commencement of the arbitration hearing. Reasonable responses shall be allowed at the arbitration hearing to new material contained in any amendments filed to the briefs but not previously responded to.

(D) <u>Arbitration Award</u>. The Board shall make a decision and award with regard to the terms of this Agreement, the original intentions of the parties to the extent reasonably ascertainable, and the custom and usage of the property and casualty insurance and reinsurance business which decision and award shall be in writing and shall state the factual and legal basis for the decision and award. The decision and award shall be based upon a hearing in which evidence shall be allowed and which the formal rules of evidence shall not strictly apply but in which cross examination and rebuttal shall be allowed. At its own election or at the request of the Board, either party may submit a post-hearing brief for consideration of the Board within twenty (20) days of the close of the hearing. The Board shall make its decision and award within thirty (30) days following the close of the hearing or the submission of post-hearing briefs, whichever is later, unless the parties consent to an extension. Every decision by the Board shall be by a majority of the members of the Board and each decision and award by the majority of the members of the Board shall be final and binding upon all parties to the proceeding. Either party may apply to a court of competent jurisdiction for an order confirming any decision and the award; a judgment of that Court shall thereupon be entered on any decision or award. If such an order is issued, the attorneys' fees of the party so applying and court costs will be paid by the party against whom confirmation is sought. The Board may award interest at a rate of one hundred (100) basis points above the prime rate as published in the Wall Street Journal on the date of the award of the Board calculated from the date the Board determines that any amounts due the prevailing party should have been paid to the prevailing party but may not award punitive, exemplary, or treble damages.

16

Initials:  RIC: ___  AHIC ___

(E) <u>Arbitration Expense</u>.  Each party shall bear the expense of the one arbitrator appointed by it and shall jointly and equally bear with the other party the expense of any stenographer requested, and of the umpire.  The remaining costs of the arbitration proceedings shall be finally allocated by the Board.

(F) <u>Evidence</u>.  Subject to customary and recognized legal rules of privilege, each party participating in the arbitration shall have the obligation to produce those documents and as witnesses to the arbitration those of its employees, those of its affiliates, and those of any intermediary or underwriting manager as any other participating party reasonably requests providing always that the same witnesses and documents be obtainable and relevant to the issues before the arbitration and not be unduly burdensome or excessive.  The parties may mutually agree as to pre-hearing discovery prior to the arbitration hearing and in the absence of agreement, upon the request of any party, pre-hearing discovery may be conducted as the umpire shall determine in his/her sole discretion to be in the interest of fairness, full disclosure, and a prompt hearing, decision and award by the Board.  The umpire shall be the final judge of the procedures of the Board, the conduct of the arbitration, of the rules of evidence, the rules of privilege and production and of excessiveness and relevancy of any witnesses and documents upon the petition of any participating party.  To the extent permitted by law, the Board and the umpire shall have the authority to issue subpoenas and other orders to enforce their decisions.

(G) <u>Equitable Relief</u>.  Nothing herein shall be construed to prevent any participating party from applying to a federal district court of competent jurisdiction to issue a restraining order or other equitable relief to maintain the "status quo" of the parties participating in the arbitration pending the decision and award by the Board or to prevent any party from incurring irreparable harm or damage at any time prior to the decision and award of the Board.  The Board shall also have the authority to issue interim decisions or awards in the interest of fairness, full disclosure, and a prompt and orderly hearing and decision and award by the Board.

## ARTICLE XXII.  AGENCY AGREEMENT.

If more than one Company is named as a party to this Agreement, the first named Company shall be deemed the agent of the other reinsured companies for purposes of sending or receiving notices required by the terms and conditions of this Agreement, and for purposes of remitting or receiving any monies due any party.

## ARTICLE XXIII.  SALVAGE AND SUBROGATION.

Reinsurer shall be credited with its proportional share of subrogation and salvage (i.e. reimbursement obtained or recoveries made by Company, less the actual cost, excluding salaries of officers and employees of Company and sums paid to attorneys as retainer, of obtaining such reimbursement or making such recoveries) on any claims or settlements involving this reinsurance.  Subrogation and salvage shall always be used to reimburse the excess reinsurers in the reverse order of their priority according to their participation in the loss before being used in any way to reimburse Company for its portion of the loss under its retention.

17

Initials:  RIC: _____  AHIC _____

Company shall reasonably enforce its rights to salvage or subrogation relating to any loss, a part of which loss was sustained by Reinsurer, and to reasonably prosecute all claims arising out of those rights.  In the event Company shall unreasonably refuse or neglect to enforce its rights to salvage or subrogation, Reinsurer is authorized and empowered to bring any appropriate action in the name of Company or its policyholder or otherwise to enforce those rights and Company shall cooperate fully with Reinsurer in enforcing those rights.  Company and Reinsurer shall share in the cost and expense of any unsuccessful salvage or subrogation efforts in the same proportion that Company and Reinsurer shared the loss giving rise to those salvage or subrogation efforts.

ARTICLE XXIV.   OTHER TERMS AND CONDITIONS.

A.  Waiver.  The failure of Company or Reinsurer to insist on strict compliance with this Agreement, or to exercise any right or remedy hereunder, shall not constitute a waiver of any rights contained herein nor stop the parties from thereafter demanding full and complete compliance nor prevent the parties from exercising such a remedy in the future.

B.  Conflict with Law and Severability.  If any provisions of this Agreement should be invalid under applicable laws, the latter shall control but only to the extent of the conflict without affecting the remaining provisions of this Agreement.

C.  Headings.  The headings preceding the text of the Articles and paragraphs of this Agreement are intended and inserted solely for the convenience of references and shall not affect the meaning, interpretation, construction or effect of this Agreement.

D.  Assignment.  This Agreement shall be binding upon, and inure to the benefit of, the Company and the Reinsurer and their respective successors and assigns provided, however, that this Agreement may not be assigned by either the Company or the Reinsurer without the prior written consent the other.

E.  Governing Law.  This Agreement shall be governed as to performance, administration, and interpretation by the laws of the Commonwealth of Pennsylvania, exclusive of its rules with respect to conflicts of law, except as to rules with respect to credit for reinsurance in which case the rules of all applicable states shall apply.

F.  Negotiated Agreement.  This Agreement has been negotiated by the parties and the fact that the initial and final draft shall have been prepared by Company  shall not give rise to any presumption for or against any party to this Agreement or be used in any form in the construction or interpretation of this Agreement or any of its provisions.

G.  Notices.  Wherever written notice is required under this Agreement, it shall be in writing and either delivered personally or, sent by certified mail, return receipt requested to the addresses indicated above.

18

Initials:  RIC: _____   AHIC _____

H. <u>Entire Agreement.</u> This Agreement supersedes and merges with any and all previous agreements, whether written or oral, between Company and Reinsurer, or their predecessors with respect to this excess of loss reinsurance of Company by Reinsurer commencing August 1, 1996, constitutes the full and complete Agreement between the parties with respect to that reinsurance. No amendment to this Agreement shall be valid unless in writing and signed by both parties.

## ARTICLE XXV.   <u>INTERMEDIARY CLAUSE</u>

There is no Intermediary for this Agreement.

19

Initials:   RIC: ___   AHIC ___

IN WITNESS WHEREOF, Company and Reinsurer intending to be bound have caused this Agreement to be executed by their duly authorized representatives on the dates set forth next to their names below.

**COMPANY:**

Reliance Insurance Company
Reliance Nacional Compania Argentina de Seguros, S.A.,
Reliance National (Barbados) Insurance, Ltd,.
Reliance National Insurance Company (U.K.) Ltd.,
Regent International Insurance Company, Ltd.,
Seguros Renamex, S.A.,
Reliance Surety Company,

through the Reliance National Division of Company

BY: _____

TITLE: _____

DATE: _____7/17/97_____

**REINSURER:**

American Healthcare Indemnity Company
(formerly named F G Insurance Corporation)

BY: _____

TITLE: _____Senior Vice President_____

DATE: _____7/28/97_____

20





January 16, 2002

The Office of Liquidations, Rehabilitations and Special Funds
5 Hanover Square
New York City, NY 10004
Attention: Statutory Liquidator for Reliance

Ladies and Gentlemen:

We previously wrote to you on November 14, 2001 (the "Letter") concerning a proposed transaction whereby Reliance Insurance Company would be relieved of all obligations under the SCPIE Companies Hospital Professional Program (the "Program"), which SCPIE would assume (the "Novation"). We understand based on conversations with your representative that you are not now prepared to proceed with such a transaction. We request that you promptly reconsider this position.

We direct your attention to the language of Article XVIII of the Reinsurance Agreement identified in exhibit A to the Letter, which states: "The reinsurance shall be payable by the Reinsurer to [Reliance] or to its liquidator, ... except ... where the Reinsurer with the consent of the direct insured or insureds have assumed such policy obligations of [Reliance] as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of [Reliance] to such payees." We believe this language authorizes the Novation by agreement between us and the insureds. We seek your acquiescence in order that we may simultaneously effect an appropriate and orderly unwinding of the related other agreements between us with respect to the Program listed on exhibit A to the Letter.

We believe that further delay by you in this matter may have seriously adverse effects on the parties and the defense of pending claims. We prefer to avoid the necessity of legal proceedings to accomplish that which is plainly in all parties' interest, and look forward to your early and favorable reply. Thank you for your attention to this urgent matter.

Very truly yours,

Joseph P. Henkes
Senior Vice President and Secretary

cc:    Christopher M. Maisel, Esq.

The SCPIE Companies

American Healthcare Indemnity Company

American Healthcare Specialty Insurance Company

SCPIE Holdings Inc.

SCPIE Indemnity Company

SCPIE Insurance Services, Inc.

SCPIE Management Company

SCPIE Management Services, Inc.

1888 Century Park East
Suite 800
Los Angeles, California
90067-1712

310/551-5900
800/962-5549

www.scpie.com

EXHIBIT 4





November 14, 2001


The Office of Liquidations, Rehabilitations and Special Funds
5 Hanover Square
New York City, NY 10004
Attention:  Statutory Liquidator for Reliance

Ladies and Gentlemen:

The purpose of this letter is to request approval from the Liquidator of Reliance Insurance Company of a novation transaction whereby Reliance would be relieved of all obligations with respect to the SCPIE Companies Hospital Professional Program (the "SCPIE Program").  This letter sets forth a brief description of the SCPIE Program, as well as the purposes and proposed procedure for the novation transaction.

SCPIE Holdings Inc. (NYSE: SKP) is a holding company engaged, through its insurance subsidiaries, in providing medical malpractice and related liability insurance products to physicians, healthcare facilities and others engaged in the healthcare industry.  Based on direct premiums written in 2000, SCPIE is one of the nation's leading providers of healthcare liability insurance.  SCPIE is currently rated "A" by AM Best.

**The SCPIE Program**

In order to write hospital professional liability risks in certain states in which SCPIE did not have rate and other filings approved for its program, SCPIE entered into a fronting arrangement with Reliance.  Under the fronting arrangement, beginning August 1, 1996, SCPIE's subsidiary American Healthcare Indemnity Company ("AHIC") (i) reinsured 100% of the SCPIE Program policies, which were written by Reliance on an excess and surplus lines basis, pursuant to an automatic facultative quota share reinsurance agreement (the "Reinsurance Agreement"), and (ii) pursuant to agreements between Reliance and other SCPIE subsidiaries, SCPIE managed and administered the SCPIE Program and all claims thereunder.  Reliance received a 5% ceding commission, and holds a guarantee of SCPIE and a letter of credit to secure AHIC's performance.  Reliance ceased writing policies under the SCPIE Program, and the Reinsurance Agreement was cancelled, October 1, 1999, but SCPIE's administration of the runoff and claims processing has continued.  The agreements with Reliance pursuant to which the SCPIE Program operated are listed on Exhibit A, and copies will be furnished upon request.  Policies written by Reliance under the SCPIE Program are listed on Exhibit B (the "Policies"); all have expired.

**EXHIBIT 3**

Early in 2001, SCPIE inaugurated discussions with Reliance concerning a potential novation of the SCPIE Program whereby SCPIE would assume all obligations of Reliance under the SCPIE Program and Reliance would be released. At that time, it came to the attention of the parties that there were certain discrepancies in premium accounting between them with respect to the SCPIE Program, and Reliance requested that these be reconciled. SCPIE and Reliance agreed to a novation subject to the accounting reconciliation. Attached as Exhibit C is SCPIE's calculation of amounts owed to Reliance, totaling $103,866.89. A check in this amount is being mailed under separate cover.

SCPIE has continued to administer claims under the Policies in accordance with its agreements with Reliance. Many of these claims are ripe for settlement or adjudication, and trials, motions, discovery, and negotiations are pending in several states. Attached on Exhibit D is a list of litigation and claims pending.

In light of the Order of Liquidation dated October 3, 2001, it is imperative that we resolve this matter expeditiously in order to avoid or diminish any potential adverse effects to the Reliance estate and SCPIE which may be a consequence of uncertainty and delay.

## Purposes of the Novation Transaction

The purposes of the novation transaction are to (i) eliminate the administrative burden and expense to the Reliance estate of the SCPIE Program, (ii) accelerate resolution of claims under the SCPIE Program, and (iii) provide the least disruption to Reliance insureds under the SCPIE Program. Due to Reliance's minimal involvement in the SCPIE Program, policyholders look to SCPIE, and SCPIE believes that preserving policyholder trust and its good name in the circumstances would best be served by a novation.

## Procedures for the Novation Transaction

The proposed novation transaction would be accomplished in the most expeditious and efficient manner available. If possible, the novation could be approved by the Liquidation Court without the need to solicit individual policyholder consent (although, because it is in the policyholder's best interest to do so, each policyholder would presumably consent). Alternatively, the transaction may be accomplished by either seeking such policyholders' consent, or by an assumption reinsurance transaction in which Reliance's obligations under the Policies would be assumed and reinsured by AHIC in their entirety. SCPIE would be pleased to furnish forms of documentation for such a transaction upon request. Upon consummation of the transaction, SCPIE's guarantee would be released and its letter of credit returned.

Alternatively, if the formality of the above were an obstacle to prompt implementation, upon receipt by SCPIE of appropriate assurances from the Liquidator, SCPIE would continue to administer and resolve claims as if it were the insurer (with SCPIE agreeing not to make further claims against the Reliance estate, and vice versa).

We request your urgent attention to this matter so that SCPIE may continue to resolve claims under the Policies.

We thank you for your time and consideration of the novation transaction. Please contact Donald P. Newell at (310) 407-2723 or Thomas W. Dobson at (213) 485-1234 with any questions.

Very Truly Yours,

s/Donald P. Newell

Donald P. Newell
Senior Vice President and
Legal Counsel

## EXHIBIT A

**Agreements between Reliance and SCPIE regarding the SCPIE Program**

Automatic Facultative Quota Share Reinsurance Agreement, effective August 1, 1996, by and among Reliance Insurance Company, Reliance National Compania Argentina de Seguros, S.A., Reliance National (Barbados) Insurance, Ltd., Reliance National Insurance Company (U.K.) Ltd., Regent International Insurance Company, Ltd., Seguros Renamex, S.A., Reliance Surety Company and AHIC.

Automatic Facultative Quota Share Reinsurance Agreement, effective October 1, 1997, by and among Reliance Insurance Company, Reliance National Compania Argentina de Seguros, S.A., Reliance National (Barbados) Insurance, Ltd., Reliance National Insurance Company (U.K.) Ltd., Regent International Insurance Company, Ltd., Seguros Renamex, S.A., Reliance Surety Company and AHIC.

Program Manager's Agreement, effective October 1, 1996, by and between SCPIE Management Services, Inc. and Reliance National Risk Specialists.

Claims Service Agreement, dated as of October 13, 1996, by and between Reliance Insurance Company of Illinois and SCPIE Management Services, Inc.

Union Bank of California Irrevocable Standby Letter of Credit No. 306S231013, dated February 11, 1998.

SCPIE Reinsurance Parental Guaranty Agreement, dated as of June 1, 1998 by and among SCPIE Holdings, Inc. and Reliance Insurance Company, Reliance National Insurance Company, Reliance National Indemnity Company, Reliance Insurance Company of Illinois, United Pacific Insurance Company, Reliance Universal Insurance Company, Reliance Surety Company, Reliance Lloyds, Reliance Insurance Company and Reliance Direct Insurance Company.

Casualty Quota Share Reinsurance Agreement effective January 1, 1999, by and among SCPIE Indemnity Company, AHIC, AHSIC and various reinsurers, including Reliance Insurance Company.

## **EXHIBIT B**

### **List of Policies**

Exhibit B

| SCPIE POLICY # | RELIANCE POLICY # | INSURED NAME | POL EFF DATE | CANCEL DATE | POLICY STATUS | SORT NAME |
|---|---|---|---|---|---|---|
| HPL0001287 | NPB0139657 | BREA COMMUNITY HOSPITAL | 07/01/97 | 07/01/98 | CANCEL CM | BREA COMMUNITY |
| HPL0955518 | NPB0139660 | HADLEY MEMORIAL HOSPITAL | 07/01/97 | 07/01/99 | CANCEL CM | HADLEY MEMORIAL |
| HPL0073081 | NPB1412015 | COLORADO PLAINS MEDICAL CTR. | 10/01/96 | 12/18/96 | CANCEL CM | COLORADO PLAINS |
| HPL0190926 | NPB1412017 | MESQUITE COMMUNITY HOSPITAL LP | 09/01/96 | 09/01/99 | CANCEL OCC | MESQUITE COMMUN |
| HPL0880863 | NPB1412020 | COPPER QUEEN COMMUN HOSPITAL | 09/30/96 | 10/01/97 | CANCEL CM | COPPER QUEEN CO |
| HPL0003172 | NPB1412020 | PACIFICA OPTIMA PARTNERS | 01/01/97 | 01/01/99 | CANCEL CM | PACIFICA OPTIMA |
| HPL0005006 | NPB1412024 | COHR, INC. | 10/01/96 | 10/01/97 | CANCEL OCC | COHR, INC. |
| HPL0790833 | NPB1412026 | DAYTON GENERAL HOSPITAL | 10/01/96 | 10/01/97 | CANCEL OCC | DAYTON GENERAL |
| HPL0543168 | NPB1412035 | GOLDSEL/RETREAT INC. AND THE | 10/01/96 | 09/05/98 | RUN-OFF | GOLDSEL/RETREAT |
| HPL0190902 | NPB1412039 | GREEN OAKS HOSPITAL | 10/01/96 | 10/01/97 | CANCEL OCC | GREEN OAKS HOSP |
| HPL0073079 | NPB1412056 | LINC PARK OSTEO HOSP ASSOC. | 10/01/96 | 10/01/97 | CANCEL CM | LINC PARK OSTEO |
| HPL0543190 | NPB1412059 | LOWER FLORIDA KEYS HEALTH SYS | 10/01/96 | 10/01/98 | CANCEL CM | LOWER FLORIDA K |
| HPL0213145 | NPB1412067 | MEM HOSP SWEETWATER CO | 10/01/96 | 04/15/97 | CANCEL CM | MEM HOSP SWEETW |
| HPL0540438 | NPB1412081 | PALM SPRINGS GEN HOSPITAL | 10/01/96 | 10/01/97 | CANCEL OCC | PALM SPRINGS GE |
| HPL0073200 | NPB1412113 | THE MEMORIAL HOSPITAL | 10/01/96 | 10/01/99 | CANCEL CM | THE MEMORIAL HO |
| HPL0070897 | NPB1412143 | GRAND RIVER HOSPITAL DISTRICT | 10/01/96 | 02/01/99 | CANCEL OCC | GRAND RIVER HOS |
| HPL0073119 | NPB1412173 | RANGELY DISTRICT HOSPITAL | 11/01/96 | 09/01/99 | CANCEL CM | RANGELY DISTRIC |
| HPL0070925 | NPB1412188 | CHARTER CENTENNIAL PEAKS | 09/16/96 | 09/16/97 | CANCEL OCC | CHARTER CENTENN |
| HPL0543165 | NPB1412190 | BAPTIST HEALTH SYSTEMS OF | 10/01/96 | 01/01/97 | CANCEL OCC | BAPTIST HEALTH |
| HPL1000040 | NPD1412003 | MEMPHIS KIDNEY & DIALYSIS SRVC | 02/20/99 | 02/20/00 | CANCEL CM | MEMPHIS KIDNEY |
| HPL1000038 | NPD1412004 | WESTPORT SENIOR LIVING INVEST- | 08/09/99 | 08/24/00 | CANCEL OCC | WESTPORT SENIOR |
| HPL0547053 | NPD1412127 | ATLANTIC MUA CENTER INC | 10/01/96 | 10/01/97 | CANCEL OCC | ATLANTIC MUA CE |
| HPL0544139 | NPD1412129 | BAYSHORE MEDICAL EQUIP. PTNRS | 10/01/96 | 10/01/97 | CANCEL OCC | BAYSHORE MEDICA |
| HPL0544260 | NPD1412144 | GREYNOLDS PARK MANOR INC | 10/01/96 | 10/01/98 | CANCEL OCC | GREYNOLDS PARK |
| HPL0670340 | NPD1412153 | SIIS DBA: JHC HEALTH CENTER | 10/01/96 | 10/01/97 | CANCEL OCC | SIIS DBA: JHC H |
| HPL0734093 | NPD1412156 | MALHEUR MEMORIAL HEALTH CENTER | 10/01/96 | 12/01/97 | CANCEL OCC | MALHEUR MEMORIA |
| HPL0194143 | NPD1412166 | PHYSICIANS EMERG. CARE ASSOC | 10/01/96 | 02/01/97 | CANCEL OCC | PHYSICIANS EMER |
| HPL0544264 | NPD1412170 | POLK COUNTY DRUG COURT | 10/01/96 | 10/01/98 | CANCEL OCC | POLK COUNTY DRU |
| HPL0547088 | NPD1412172 | COMM HLTH CARE SVCS OF POLK CO | 10/01/96 | 10/01/98 | CANCEL CM | COMM HLTH CARE |
| HPL0544138 | NPD1412183 | W 49TH ST ER PHYSICIAN CORP | 10/01/96 | 10/01/98 | CANCEL OCC | W 49TH ST ER PH |
| HPL0547087 | NPD1412187 | THE MEDICAL CTR AT OCEAN REEF | 10/01/96 | 10/01/98 | CANCEL CM | THE MEDICAL CTR |
| HPL1000042 | NPD1412197 | SURGICAL LICENSED WARD | 07/01/98 | 07/01/99 | CANCEL CM | SURGICAL LICENS |
| | NPD1412188 | JJ&R EMERG MEDICAL GROUP OF FL | | | | |
| 46357 | NPD1412188 | VENUGOPAL PALANI MD | 08/18/98 | 06/12/00 | CANCEL CM | PALANI VENUGOPA |
| 46363 | NPD1412188 | FRANK ELATY MD | 08/10/99 | 06/12/00 | CANCEL CM | ELATY FRANK |
| 46611 | NPD1412188 | FAIZ E NIAZ MD | 08/11/99 | 06/12/00 | CANCEL CM | NIAZ FAIZ E |
| 46612 | NPD1412188 | MARC C MC CULLOCH MD | 02/20/99 | 06/12/00 | CANCEL CM | MCCULLOCH MARC |
| | NPD1412189 | APP OF BAPTIST HOSPITAL MIAMI | | | | |
| 107077 | NPD1412189 | APP OF BAPTIST HOSPITAL MIAMI | 10/01/96 | 09/30/97 | CANCEL CM | APP OF BAPTIST |
| 0000BP5011 | NPD1412189 | PERRY W ROBINSON MD | 07/01/97 | 09/30/97 | CANCEL CM | ROBINSON PERRY |
| 0000BP5402 | NPD1412189 | ALLAN HERSKOWITZ MD | 03/01/97 | 09/30/97 | CANCEL CM | HERSKOWITZ ALLA |
| 000BP01001 | NPD1412189 | BRADLEY M AIKEN MD | 10/01/96 | 09/30/97 | CANCEL CM | AIKEN BRADLEY M |
| 000BP01002 | NPD1412189 | ROBERT K SCHWARTZ MD | 10/01/96 | 09/30/97 | CANCEL CM | SCHWARTZ ROBERT |
| 000BP01003 | NPD1412189 | RAMON L CUEVAS MD | 10/01/96 | 09/30/97 | CANCEL CM | CUEVAS RAMON L |
| 000BP02003 | NPD1412189 | MICHAEL CUMMINGS MD | 10/01/96 | 09/30/97 | CANCEL CM | CUMMINGS MICHAE |
| 000BP02004 | NPD1412189 | ROBERT FRIEDMAN MD | 10/01/96 | 09/30/97 | CANCEL CM | FRIEDMAN ROBERT |
| 000BP02005 | NPD1412189 | DAVID GLABMAN MD | 10/01/96 | 09/30/97 | CANCEL CM | GLABMAN DAVID |
| 000BP02006 | NPD1412189 | RICHARD W HARRIS MD | 10/01/96 | 09/30/97 | CANCEL CM | HARRIS RICHARD |
| 000BP02007 | NPD1412189 | KELLY K LIANG MD | 10/01/96 | 09/30/97 | CANCEL CM | LIANG KELLY K |
| 000BP02008 | NPD1412189 | MARTIN P ROTHBERG MD | 10/01/96 | 09/30/97 | CANCEL CM | ROTHBERG MARTIN |
| 000BP02009 | NPD1412189 | FLEUR SACK MD | 10/01/96 | 09/30/97 | CANCEL CM | SACK FLEUR |
| 000BP02010 | NPD1412189 | ROBERT T SALZMAN MD | 10/01/96 | 06/30/97 | CANCEL CM | SALZMAN ROBERT |
| 000BP02011 | NPD1412189 | BARRY M SIEGEL MD | 10/01/96 | 09/30/97 | CANCEL CM | SIEGEL BARRY M |
| 000BP02012 | NPD1412189 | MARCY GALINSKY MD | 10/01/96 | 09/30/97 | CANCEL CM | GALINSKY MARCY |
| 000BP02013 | NPD1412189 | JOHN D STRAUSBAUGH MD | 10/01/96 | 09/30/97 | CANCEL CM | STRAUSBAUGH JOH |
| 000BP02014 | NPD1412189 | CHERYL J ROBERTS MD | 10/01/96 | 09/30/97 | CANCEL CM | ROBERTS CHERYL |
| 000BP02016 | NPD1412189 | ERIC A SHELDON MD | 10/01/96 | 06/30/97 | CANCEL CM | SHELDON ERIC A |
| 000BP02017 | NPD1412189 | DIEGO C SAAVEDRA MD | 10/01/96 | 09/30/97 | CANCEL CM | SAAVEDRA DIEGO |
| 000BP02018 | NPD1412189 | ALEX E TORRES MD | 10/01/96 | 09/30/97 | CANCEL CM | TORRES ALEX E |
| 000BP02019 | NPD1412189 | ALFONSO J MONGE MD | 10/01/96 | 09/30/97 | CANCEL CM | MONGE ALFONSO J |
| 000BP02020 | NPD1412189 | CAROL A DA COSTA GOMEZ MD | 07/29/97 | 09/30/97 | CANCEL CM | GOMEZ CAROL A D |
| 000BP04001 | NPD1412189 | ARCENIO CHACON MD | 10/01/96 | 09/30/97 | CANCEL CM | CHACON ARCENIO |
| 000BP09001 | NPD1412189 | ANDREW B KAIRALLA MD | 10/01/96 | 09/30/97 | CANCEL CM | KAIRALLA ANDREW |
| 000BP11002 | NPD1412189 | PHILIP T NIX PA | 10/01/96 | 09/30/97 | CANCEL CM | NIX PHILIP T |
| 000BP11003 | NPD1412189 | CHRISTOPHER HAYES PA | 10/01/96 | 09/30/97 | CANCEL CM | HAYES CHRISTOPH |
| 000BP11004 | NPD1412189 | CESAR FERNANDEZ PA | 10/01/96 | 09/30/97 | CANCEL CM | FERNANDEZ CESAR |
| 000BP11005 | NPD1412189 | JAMA HARE PA | 10/01/96 | 09/30/97 | CANCEL CM | HARE JAMA |
| 000BP12001 | NPD1412189 | GUILLERMO M PONS MD | 10/01/96 | 09/30/97 | CANCEL CM | PONS GUILLERMO |
| 000BP17001 | NPD1412189 | ESPERANZA VARGIS-POSADA MD | 10/01/96 | 09/30/97 | CANCEL CM | VARGIS POSADA E |
| 000BP18001 | NPD1412189 | GUSTAVO A CALLEJA MD | 10/01/96 | 09/30/97 | CANCEL CM | CALLEJA GUSTAVO |
| 000BP18002 | NPD1412189 | EDWARD J FELLER MD | 10/01/96 | 12/12/96 | CANCEL CM | FELLER EDWARD J |
| 000BP18003 | NPD1412189 | FRED S FELSER MD | 10/01/96 | 03/31/97 | WAIVED | FELSER FRED S |
| 000BP18004 | NPD1412189 | PAMELA J GARJIAN MD | 10/01/96 | 12/12/96 | CANCEL CM | GARJIAN PAMELA |

Exhibit B

| SCPIE POLICY # | RELIANCE POLICY # | INSURED NAME | POL EFF DATE | CANCEL DATE | POLICY STATUS | SORT NAME |
|---|---|---|---|---|---|---|
| 000BP18005 | NPD1412189 | HARRIS I GOLDBERG MD | 10/01/96 | 09/30/97 | CANCEL CM | GOLDBERG HARRIS |
| 000BP18006 | NPD1412189 | MICHAEL D GUBER MD | 10/01/96 | 09/30/97 | CANCEL CM | GUBER MICHAEL D |
| 000BP18007 | NPD1412189 | EUGENE C KAFKA MD | 10/01/96 | 12/12/96 | CANCEL CM | KAFKA EUGENE C |
| 000BP18008 | NPD1412189 | JAMES S LEAVITT MD | 10/01/96 | 09/30/97 | CANCEL CM | LEAVITT JAMES S |
| 000BP18009 | NPD1412189 | MARC R LEDERHANDLER MD | 10/01/96 | 09/30/97 | CANCEL CM | LEDERHANDLER MA |
| 000BP18010 | NPD1412189 | THOMAS J RICE MD | 10/01/96 | 09/30/97 | CANCEL CM | RICE THOMAS J |
| 000BP18011 | NPD1412189 | S. LAWRENCE ROTHMAN MD | 10/01/96 | 09/30/97 | CANCEL CM | ROTHMAN S LAWRE |
| 000BP18012 | NPD1412189 | HOWARD I SCHWARTZ MD | 10/01/96 | 09/30/97 | CANCEL CM | SCHWARTZ HOWARD |
| 000BP18013 | NPD1412189 | EDUARDO RUAN MD | 10/01/96 | 09/30/97 | CANCEL CM | RUAN EDUARDO |
| 000BP21001 | NPD1412189 | MICHAEL B COLLINS MD | 10/01/96 | 05/01/97 | PD RUN-OFF | COLLINS MICHAEL |
| 000BP21002 | NPD1412189 | JOSEPH G WILLMITCH PA | 10/01/96 | 04/13/97 | CANCEL CM | WILLMITCH JOSEP |
| 000BP25001 | NPD1412189 | JAMES W BARROW MD | 10/01/96 | 06/01/97 | RUN-OFF | BARROW JAMES W |
| 000BP25002 | NPD1412189 | NORBERTO CARTAGENA JR MD | 10/01/96 | 09/30/97 | CANCEL CM | CARTAGENA NORBE |
| 000BP25003 | NPD1412189 | EDWIN W GOULD MD | 10/01/96 | 09/30/97 | CANCEL CM | GOULD EDWIN W |
| 000BP25004 | NPD1412189 | WILLIAM E RIEMER MD | 10/01/96 | 09/30/97 | CANCEL CM | REIMER WILLIAM |
| 000BP25005 | NPD1412189 | DANIEL RUBIN MD | 10/01/96 | 09/30/97 | CANCEL CM | RUBIN DANIEL |
| 000BP26001 | NPD1412189 | DAVID S HOFFMAN MD | 10/01/96 | 09/30/97 | CANCEL CM | HOFFMAN DAVID S |
| 000BP26002 | NPD1412189 | MICHAEL A KAPLAN MD | 10/01/96 | 09/30/97 | CANCEL CM | KAPLAN MICHAEL |
| 000BP26003 | NPD1412189 | JAMES L KATSIKAS MD | 10/01/96 | 09/30/97 | CANCEL CM | KATSIKAS JAMES |
| 000BP26004 | NPD1412189 | VICTOR M RICHARDS MD | 10/01/96 | 09/30/97 | CANCEL CM | RICHARDS VICTOR |
| 000BP27001 | NPD1412189 | RENE J GARCIA MD | 10/01/96 | 12/31/96 | CANCEL CM | GARCIA RENE J |
| 000BP28001 | NPD1412189 | ANDREW B EQOL MD | 10/01/96 | 09/30/97 | CANCEL CM | EQOL ANDREW B |
| 000BP28002 | NPD1412189 | I A FEIN MD | 10/01/96 | 09/30/97 | CANCEL CM | FEIN I A |
| 000BP28003 | NPD1412189 | OSCAR G HERNANDEZ MD | 10/01/96 | 09/30/97 | CANCEL CM | HERNANDEZ OSCAR |
| 000BP28004 | NPD1412189 | RICHARD S PRAGER MD | 10/01/96 | 09/30/97 | CANCEL CM | PRAGER RICHARD |
| 000BP28005 | NPD1412189 | GEORGE J PROFETA MD | 10/01/96 | 07/06/97 | RUN-OFF | PROFETA GEORGE |
| 000BP29001 | NPD1412189 | LEON ADLER MD | 10/01/96 | 09/30/97 | CANCEL CM | ADLER LEON |
| 000BP29002 | NPD1412189 | GARY BECKER MD | 10/01/96 | 09/30/97 | CANCEL CM | BECKER GARY |
| 000BP29003 | NPD1412189 | JAMES F BENENATI MD | 10/01/96 | 09/30/97 | CANCEL CM | BENENATI JAMES |
| 000BP29004 | NPD1412189 | IRA F BRAUN MD | 10/01/96 | 09/30/97 | CANCEL CM | BRAUN IRA F |
| 000BP29005 | NPD1412189 | MARIS IPARRAGUIRRE MD | 10/01/96 | 09/30/97 | CANCEL CM | IPARRAGUIRRE MA |
| 000BP29006 | NPD1412189 | JACK KAPLAN MD | 10/01/96 | 09/30/97 | CANCEL CM | KAPLAN JACK |
| 000BP29007 | NPD1412189 | BARRY T KATZEN MD | 10/01/96 | 09/30/97 | CANCEL CM | KATZEN BARRY T |
| 000BP29008 | NPD1412189 | NEIL H MESSINGER MD | 10/01/96 | 09/30/97 | CANCEL CM | MESSINGER NEIL |
| 000BP29009 | NPD1412189 | THOMAS NAIDICH MD | 10/01/96 | 09/30/97 | CANCEL CM | NAIDICH THOMAS |
| 000BP29010 | NPD1412189 | ANN PODRASKY MD | 10/01/96 | 09/30/97 | CANCEL CM | PODRASKY ANN |
| 000BP29011 | NPD1412189 | T H PRYOR MD | 10/01/96 | 09/30/97 | CANCEL CM | PRYOR T H |
| 000BP29012 | NPD1412189 | JONATHAN RUBIN MD | 10/01/96 | 09/30/97 | CANCEL CM | RUBIN JONATHAN |
| 000BP29013 | NPD1412189 | RANDY SCHENKMAN MD | 10/01/96 | 09/30/97 | CANCEL CM | SCHENKMAN RANDY |
| 000BP29014 | NPD1412189 | STANLEY E SNEIDER MD | 10/01/96 | 09/30/97 | CANCEL CM | SNEIDER STANLEY |
| 000BP29015 | NPD1412189 | CLIFF STAMLER MD | 10/01/96 | 09/30/97 | CANCEL CM | STAMLER CLIFF |
| 000BP29016 | NPD1412189 | GERALD ZEMEL MD | 10/01/96 | 09/30/97 | CANCEL CM | ZEMEL GERALD |
| 000BP29017 | NPD1412189 | JACK ZIFFER MD | 10/01/96 | 09/30/97 | CANCEL CM | ZIFFER JACK |
| 000BP29021 | NPD1412189 | WARREN R JANOWITZ MD | 10/01/96 | 09/30/97 | CANCEL CM | JANOWITZ WARREN |
| 000BP29022 | NPD1412189 | GERALD EDELSTEIN MD | 10/01/96 | 09/30/97 | CANCEL CM | EDELSTEIN GERAL |
| 000BP29024 | NPD1412189 | GEORGE SALZBERG MD | 05/01/97 | 09/30/97 | CANCEL CM | SALZBERG GEORGE |
| 000BP29025 | NPD1412189 | ALBERTO CONVERS MD | 05/01/97 | 09/30/97 | CANCEL CM | CONVERS ALBERTO |
| 000BP29026 | NPD1412189 | KEVIN ABRAMS MD | 07/14/97 | 09/30/97 | CANCEL CM | ABRAMS KEVIN |
| 000BP29027 | NPD1412189 | AMY CANTOR MD | 08/01/97 | 09/30/97 | CANCEL CM | CANTOR AMY |
| 000BP29S18 | NPD1412189 | SLOT 1 DIAG RAD W/ANG FELLOW | 10/01/96 | 09/30/97 | CANCEL CM | SLOT 1 DIAG RAD |
| 000BP29S19 | NPD1412189 | SLOT 3 DIAG RAD W/ANG FELLOW | 10/01/96 | 09/30/97 | CANCEL CM | SLOT 3 DIAG RAD |
| 000BP29S20 | NPD1412189 | SLOT 2 DIAG RAD NO ANG FELLOW | 10/01/96 | 09/30/97 | CANCEL CM | SLOT 2 DIAG RAD |
| 000BP29S23 | NPD1412189 | SLOT 4 DIAG RAD W/AND FELLOW | 10/01/96 | 09/30/97 | CANCEL CM | SLOT 4 DIAG RAD |
| 000BP30001 | NPD1412189 | DEBORAH L ALBERT MD | 10/01/96 | 09/30/97 | CANCEL CM | ALBERT DEBORAH |
| 000BP31001 | NPD1412189 | BARRY E BRAND MD | 10/01/96 | 09/30/97 | CANCEL CM | BRAND BARRY E |
| 000BP31002 | NPD1412189 | ROBERT O LANOFF MD | 10/01/96 | 09/30/97 | CANCEL CM | LANOFF ROBERT O |
| 000BP31003 | NPD1412189 | SETH D ROSEN MD | 10/01/96 | 09/30/97 | CANCEL CM | ROSEN SETH D |
| 000BP31004 | NPD1412189 | NEIL E ROSENKRANZ MD | 10/01/96 | 09/30/97 | CANCEL CM | ROSENKRANZ NEIL |
| 000BP31005 | NPD1412189 | DAVID A SOMMER MD | 10/01/96 | 09/30/97 | CANCEL CM | SOMMER DAVID A |
| 000BP32001 | NPD1412189 | H B BAKER MD | 10/01/96 | 09/30/97 | CANCEL CM | BAKER H B |
| 000BP32002 | NPD1412189 | NATHAN A JACOBSON MD | 10/01/96 | 09/30/97 | CANCEL CM | JACOBSON NATHAN |
| 000BP32003 | NPD1412189 | RICHARD L LEVINE MD | 10/01/96 | 09/30/97 | CANCEL CM | LEVINE RICHARD |
| 000BP32004 | NPD1412189 | JUAN C PEREZ-MORALES MD | 10/01/96 | 09/30/97 | CANCEL CM | PEREZ MORALES J |
| 000BP33001 | NPD1412189 | DAVID S EDELMAN MD | 10/01/96 | 09/30/97 | CANCEL CM | EDELMAN DAVID S |
| 000BP33002 | NPD1412189 | DAVID G ANDERSON MD | 10/01/96 | 06/15/97 | CANCEL CM | ANDERSON DAVID |
| 000BP34001 | NPD1412189 | MANUEL E ALONSO MD | 10/01/96 | 09/30/97 | CANCEL CM | ALONSO MANUEL E |
| 000BP34002 | NPD1412189 | JULIO M BAQUERO MD | 10/01/96 | 09/30/97 | CANCEL CM | BAQUERO JULIO M |
| 000BP34003 | NPD1412189 | BRUCE A BAUER MD | 10/01/96 | 09/30/97 | CANCEL CM | BAUER BRUCE A |
| 000BP34004 | NPD1412189 | LYNN A CLEMENTS-NORTHLAND MD | 10/01/96 | 09/30/97 | CANCEL CM | CLEMENTS NORTHL |
| 000BP34005 | NPD1412189 | GLENN H GALLOW MD | 10/01/96 | 09/30/97 | CANCEL CM | GALLOW GLENN H |
| 000BP34006 | NPD1412189 | ROBERT GORDON MD | 10/01/96 | 09/30/97 | CANCEL CM | GORDON ROBERT |
| 000BP34007 | NPD1412189 | JANES L GREVE MD | 10/01/96 | 09/30/97 | CANCEL CM | GREVE JAMES L |
| 000BP34008 | NPD1412189 | MICHAEL A MOSES MD | 10/01/96 | 09/30/97 | CANCEL CM | MOSES MICHAEL A |
| 000BP34009 | NPD1412189 | ANTONIO E RABASSA MD | 10/01/96 | 09/30/97 | CANCEL CM | RABASSA ANTONIO |
| 000BP34010 | NPD1412189 | IVAN A MALAVE-VIDAL MD | 10/01/96 | 09/30/97 | CANCEL CM | MALAVE VIDAL IV |

Exhibit B

| SCPIE POLICY # | RELIANCE POLICY # | INSURED NAME | POL EFF DATE | CANCEL DATE | POLICY STATUS | SORT NAME |
|---|---|---|---|---|---|---|
| 000BP35001 | NPD1412189 | MOISES JACOBS MD | 10/01/96 | 09/30/97 | CANCEL CM | JACOBS MOISES |
| 000BP35002 | NPD1412189 | CRISTINA LOPEZ-PENALVER MD | 10/01/96 | 09/30/97 | CANCEL CM | LOPEZ PENALVER |
| 000BP36001 | NPD1412189 | FRANCISCO MIRANDA MD | 10/01/96 | 03/11/97 | RUN-OFF | MIRANDA FRANCIS |
| 000BP36002 | NPD1412189 | GLENROY P WONG MD | 10/01/96 | 09/30/97 | CANCEL CM | WONG GLENROY P |
| 000BP36003 | NPD1412189 | SONIA HANSEN MD | 10/01/96 | 09/30/97 | CANCEL CM | HANSEN SONIA |
| 000BP36004 | NPD1412189 | MARIA S SURPRENANT MD | 10/01/96 | 09/30/97 | CANCEL CM | SURPRENANT MARI |
| 000BP36005 | NPD1412189 | RIGOBERTO FRANCO MD | 01/01/97 | 09/30/97 | CANCEL CM | FRANCO RIGOBERT |
| 000BP36006 | NPD1412189 | PHILIP GEORGE MD | 01/01/97 | 09/30/97 | CANCEL CM | GEORGE PHILIP |
| 000BP36007 | NPD1412189 | JASON R HANFT MD | 01/01/97 | 09/30/97 | CANCEL CM | HANFT JASON R |
| 000BP36008 | NPD1412189 | ALEJANDRO J MARTINEZ MD | 01/01/97 | 09/30/97 | CANCEL CM | MARTINEZ ALEJAN |
| 000BP36009 | NPD1412189 | RENE N MAYORGA MD | 01/01/97 | 09/30/97 | CANCEL CM | MAYORGA RENE N |
| 000BP36010 | NPD1412189 | ALEJANDRO O ROCA MD | 01/01/97 | 09/30/97 | CANCEL CM | ROCA ALEJANDRO |
| 000BP36011 | NPD1412189 | ROBERT A ZOLTEN MD | 01/01/97 | 09/30/97 | CANCEL CM | ZOLTEN ROBERT A |
| 000BP37001 | NPD1412189 | BARRY HALPERN MD | 10/01/96 | 09/30/97 | CANCEL CM | HALPERN BARRY |
| 000BP37002 | NPD1412189 | YALE M SAMOLE MD | 10/01/96 | 09/30/97 | CANCEL CM | SAMOLE YALE M |
| 000BP37003 | NPD1412189 | BERNARD S SILVERSTEIN MD | 10/01/96 | 09/30/97 | CANCEL CM | SILVERSTEIN BER |
| 000BP37004 | NPD1412189 | MATTHEW E SNOW MD | 10/01/96 | 09/30/97 | CANCEL CM | SNOW MATTHEW E |
| 000BP37005 | NPD1412189 | LEONARD J ZWERLING MD | 10/01/96 | 09/30/97 | CANCEL CM | ZWERLING LEONAR |
| 000BP37006 | NPD1412189 | DAN KRAUTHAMER MD | 11/01/96 | 09/30/97 | CANCEL CM | KRAUTHAMER DAN |
| 000BP37007 | NPD1412189 | EDWARD SIMON MD | 11/01/96 | 09/30/97 | CANCEL CM | SIMON EDWARD |
| 000BP37008 | NPD1412189 | ABBE ROSENBAUM MD | 09/08/97 | 09/30/97 | CANCEL CM | ROSENBAUM ABBE |
| 000BP38001 | NPD1412189 | DOURED DAGHISTANI MD | 10/01/96 | 09/30/97 | CANCEL CM | DAGHISTANI DOUR |
| 000BP39001 | NPD1412189 | OMAR J COSTA MD | 10/01/96 | 09/30/97 | CANCEL CM | COSTA OMAR J |
| 000BP39002 | NPD1412189 | OLGA C GARCIA MD | 10/01/96 | 09/30/97 | CANCEL CM | GARCIA OLGA C |
| 000BP39003 | NPD1412189 | JORGE E PEREZ MD | 10/01/96 | 09/30/97 | CANCEL CM | PEREZ JORGE E |
| 000BP39004 | NPD1412189 | ALEX B KOETZLE MD | 10/01/96 | 09/30/97 | CANCEL CM | KOETZLE ALEX B |
| 000BP39005 | NPD1412189 | LEON E TEJIDOR MD | 10/01/96 | 09/30/97 | CANCEL CM | TEJIDOR LEON E |
| 000BP39006 | NPD1412189 | ALBERT R TANO MD | 10/01/96 | 09/30/97 | CANCEL CM | TANO ALBERT R |
| 000BP39007 | NPD1412189 | ERNESTO VALDES MD | 10/01/96 | 09/30/97 | CANCEL CM | VALDES ERNESTO |
| 000BP39008 | NPD1412189 | VENUS HIGHSMITH MD | 10/01/96 | 09/30/97 | CANCEL CM | HIGHSMITH VENUS |
| 000BP39009 | NPD1412189 | JORGE JORDAN MD | 10/01/96 | 09/30/97 | CANCEL CM | JORDAN JORGE |
| 000BP39010 | NPD1412189 | BRIAN WHALEY MD | 10/01/96 | 09/30/97 | CANCEL CM | WHALEY BRIAN |
| 000BP39011 | NPD1412189 | GISELA DIAZ-MONROIG MD | 10/01/96 | 09/30/97 | CANCEL CM | DIAZ MONROIG GI |
| 000BP39012 | NPD1412189 | MARY J PAZOS MD | 11/02/96 | 09/30/97 | CANCEL CM | PAZOS MARY J |
| 000BP39013 | NPD1412189 | MANUEL A CAMPO MD | 01/20/97 | 09/30/97 | CANCEL CM | CAMPO MANUEL A |
| 000BP39014 | NPD1412189 | PAULA L PLYMPTON NP | 03/01/97 | 09/30/97 | CANCEL CM | PLYMPTON PAULA |
| 000BP39015 | NPD1412189 | MARIA KOBY RN | 02/15/97 | 09/30/97 | CANCEL CM | KOBY MARIA |
| 000BP39016 | NPD1412189 | WILLIAM R DRISCOLL MD | 07/07/97 | 09/30/97 | CANCEL CM | DRISCOLL WILLIA |
| 000BP39017 | NPD1412189 | HOLLY HOWARD NP | 08/01/97 | 09/30/97 | CANCEL CM | HOWARD HOLLY |
| 000BP39018 | NPD1412189 | ANA HERNANDEZ NP | 08/01/97 | 09/30/97 | CANCEL CM | HERNANDEZ ANA |
| 000BP39019 | NPD1412189 | JACK BANDEL MD | 08/17/97 | 09/30/97 | CANCEL CM | BANDEL JACK |
| 000BP40001 | NPD1412189 | LOUIS T GIDEL MD | 10/01/96 | 09/30/97 | CANCEL CM | GIDEL LOUIS T |
| 000BP40002 | NPD1412189 | MITCHELL PETUSEVSKY MD | 10/01/96 | 09/30/97 | CANCEL CM | PETUSEVSKY MITC |
| 000BP40003 | NPD1412189 | RAYMOND L PARKER MD | 10/01/96 | 09/30/97 | CANCEL CM | PARKER RAYMOND |
| 000BP41001 | NPD1412189 | ANGEL AVILES MD | 10/01/96 | 09/30/97 | CANCEL CM | AVILES ANGEL |
| 000BP41002 | NPD1412189 | NANCY EKLUND MD | 10/10/96 | 09/30/97 | CANCEL CM | EKLUND NANCY |
| 000BP41003 | NPD1412189 | CARMEN LUZ DE LERMA MD | 10/24/96 | 09/30/97 | CANCEL CM | LUZ DE LERMA CA |
| 000BP41004 | NPD1412189 | ENRIQUE FRAGA MD | 03/01/97 | 09/30/97 | CANCEL CM | FRAGA ENRIQUE |
| 000BP41005 | NPD1412189 | ANIQUE M BRYAN MD | 06/30/97 | 09/30/97 | CANCEL CM | BRYAN ANIQUE M |
| 000BP41006 | NPD1412189 | KLARA GERSHMAN MD | 07/01/97 | 09/30/97 | CANCEL CM | GERSHMAN KLARA |
| 000BP42001 | NPD1412189 | JOSE A BENGOCHEA MD | 10/01/96 | 09/30/97 | CANCEL CM | BENGOCHEA JOSE |
| 000BP42002 | NPD1412189 | EYSE MARQUEZ-BRITO MD | 10/01/96 | 09/30/97 | CANCEL CM | MARQUEZ BRITO E |
| 000BP43001 | NPD1412189 | ALAN S SEIFER MD | 10/01/96 | 03/31/97 | CANCEL CM | SEIFER ALAN S |
| 000BP44001 | NPD1412189 | JORGE M BARCENAS MD | 10/21/96 | 09/30/97 | CANCEL CM | BARCENAS JORGE |
| 000BP44002 | NPD1412189 | DEAN M DOLISON MD | 10/21/96 | 09/30/97 | CANCEL CM | DOLISON DEAN M |
| 000BP44003 | NPD1412189 | AVELINO R CARIDE MD | 10/21/96 | 09/30/97 | CANCEL CM | CARIDE AVELINO |
| 000BP44004 | NPD1412189 | BERTHA S JALILIE MD | 10/21/96 | 03/28/97 | CANCEL CM | JALILIE BERTHA |
| 000BP44005 | NPD1412189 | JULIO JORGE MD | 10/21/96 | 09/30/97 | CANCEL CM | JORGE JULIO |
| 000BP44006 | NPD1412189 | CARLOS M LAROCCA MD | 10/21/96 | 09/30/97 | CANCEL CM | LAROCCA CARLOS |
| 000BP44007 | NPD1412189 | JORDON S MATLIN MD | 10/21/96 | 09/30/97 | CANCEL CM | MATLIN JORDON S |
| 000BP44008 | NPD1412189 | DALE MATZA MD | 10/21/96 | 09/30/97 | CANCEL CM | MATZA DALE |
| 000BP44009 | NPD1412189 | STEVEN J MEYERSON MD | 10/21/96 | 09/30/97 | CANCEL CM | MEYERSON STEVEN |
| 000BP44010 | NPD1412189 | CINDY KAY MITCH-GOMEZ MD | 10/21/96 | 09/30/97 | CANCEL CM | MITCHGOMEZ CIND |
| 000BP44011 | NPD1412189 | JEFFREY B ROSEN MD | 10/21/96 | 09/30/97 | CANCEL CM | ROSEN JEFFREY B |
| 000BP44012 | NPD1412189 | HAROLD M SILBERMAN MD | 10/21/96 | 09/30/97 | CANCEL CM | SILBERMAN HAROL |
| 000BP44013 | NPD1412189 | ERIC SMITH MD | 10/21/96 | 09/30/97 | CANCEL CM | SMITH ERIC |
| 000BP44014 | NPD1412189 | SUSAN YAHIA MD | 10/21/96 | 09/30/97 | CANCEL CM | YAHIA SUSAN |
| 000BP44015 | NPD1412189 | MARTIN M BERGER MD | 01/01/97 | 09/30/97 | CANCEL CM | BERGER MARTIN M |
| 000BP44016 | NPD1412189 | ALAN S SEIFER MD | 08/20/97 | 09/30/97 | CANCEL CM | SEIFER ALAN S |
| 000BP44017 | NPD1412189 | ROGER K LEAVITT MD | 09/02/97 | 09/30/97 | CANCEL CM | LEAVITT ROGER K |
| 000BP44901 | NPD1412189 | PATRICIA M WILLIAMS NP | 10/21/96 | 09/30/97 | CANCEL CM | WILLIAMS PATRIC |
| 000BP45001 | NPD1412189 | JOSE R AZARET MD | 01/01/97 | 09/30/97 | CANCEL CM | AZARET JOSE R |
| 000BP45002 | NPD1412189 | EMILIO H LOPEZ MD | 01/01/97 | 09/30/97 | CANCEL CM | LOPEZ EMILIO H |
| 000BP46001 | NPD1412189 | PAMELA J LARCADA MD | 01/01/97 | 03/31/97 | CANCEL CM | LARCADA PAMELA |
| 000BP46002 | NPD1412189 | CRISTINA R MONTIEL MD | 01/01/97 | 03/31/97 | CANCEL CM | MONTIEL CRISTIN |

Exhibit B

| SCPIE POLICY # | RELIANCE POLICY # | INSURED NAME | POL EFF DATE | CANCEL DATE | POLICY STATUS | SORT NAME |
|---|---|---|---|---|---|---|
| 000BP46003 | NPD1412189 | ROLANDO A PENATE MD | 01/01/97 | 03/31/97 | CANCEL CM | PENATE ROLANDO |
| 000BP46004 | NPD1412189 | NORMAN R RUIZ-CASTANEDA MD | 01/01/97 | 03/31/97 | CANCEL CM | RUIZCASTANEDA N |
| 000BP46005 | NPD1412189 | MARGARITA FERNANDEZ-PUJOL MD | 01/01/97 | 03/31/97 | CANCEL CM | FERNANDEZPUJOL |
| 000BP47001 | NPD1412189 | EDWARD J FELLER MD | 12/13/96 | 09/30/97 | CANCEL CM | FELLER EDWARD J |
| 000BP47002 | NPD1412189 | PAMELA J GARJIAN MD | 12/13/96 | 09/30/97 | CANCEL CM | GARJIAN PAMELA |
| 000BP47003 | NPD1412189 | EUGENE C KAFKA MD | 12/13/96 | 09/30/97 | CANCEL CM | KAFKA EUGENE C |
| 000BP48001 | NPD1412189 | LEONARD D BENITEZ MD | 01/01/97 | 09/30/97 | CANCEL CM | BENITEZ LEONARD |
| 000BP49001 | NPD1412189 | KENNETH FLICKER MD | 01/01/97 | 09/30/97 | CANCEL CM | FLICKER KENNETH |
| 000BP49002 | NPD1412189 | NORMAN D GOLDBERG MD | 01/01/97 | 09/30/97 | CANCEL CM | GOLDBERG NORMAN |
| 000BP49003 | NPD1412189 | LINDA C KELLER MD | 01/01/97 | 09/30/97 | CANCEL CM | KELLER LINDA C |
| 000BP49004 | NPD1412189 | PHILIP PAUL MD | 01/01/97 | 09/30/97 | CANCEL CM | PAUL PHILIP |
| 000BP49005 | NPD1412189 | KIRSTEN NIELSEN MD | 04/01/97 | 09/30/97 | CANCEL CM | NIELSEN KIRSTEN |
| 000BP53001 | NPD1412189 | LAWRENCE BLACHER MD | 03/31/97 | 09/30/97 | CANCEL CM | BLACHER LAWRENC |
| 000BP53002 | NPD1412189 | CURTIS HAMBURG MD | 03/07/97 | 09/30/97 | CANCEL CM | HAMBURG CURTIS |
| 000BP53003 | NPD1412189 | JONATHAN ROBERTS MD | 01/20/97 | 09/30/97 | CANCEL CM | ROBERTS JONATHA |
| 000BP53004 | NPD1412189 | BERNARD SCHRAGER MD | 02/01/97 | 09/30/97 | CANCEL CM | SCHRAGER BERNAR |
| 000BP53005 | NPD1412189 | PAUL HOWARD SEIGEL MD | 02/01/97 | 09/30/97 | CANCEL CM | SEIGEL PAUL HOW |
| 000BP53006 | NPD1412189 | JOSEPH G WILLMITCH PA | 08/20/97 | 09/30/97 | CANCEL CM | WILLMITCH JOSEP |
| 000BP54001 | NPD1412189 | BERNARD GRAN MD | 03/01/97 | 09/30/97 | CANCEL CM | GRAN BERNARD |
| 000BP54002 | NPD1412189 | ALLAN HERSKOWITZ MD | 03/01/97 | 09/30/97 | CANCEL CM | HERSKOWITZ ALLA |
| 000BP54003 | NPD1412189 | GUILLERMO MARTINEZ MD | 03/01/97 | 09/30/97 | CANCEL CM | MARTINEZ GUILLE |
| 000BP55001 | NPD1412189 | KENNETH AHONEN MD | 07/01/97 | 09/30/97 | CANCEL CM | AHONEN KENNETH |
| 000BP55002 | NPD1412189 | VIRENDRA BHUTA MD | 07/01/97 | 09/30/97 | CANCEL CM | BHUTA VIRENDRA |
| 000BP55003 | NPD1412189 | MICHAEL T BRAZDA MD | 07/01/97 | 09/30/97 | CANCEL CM | BRAZDA MICHAEL |
| 000BP55004 | NPD1412189 | HERBERT H GREENE MD | 07/01/97 | 09/30/97 | CANCEL CM | GREENE HERBERT |
| 000BP55005 | NPD1412189 | MIGUEL A HERRERA MD | 07/01/97 | 09/30/97 | CANCEL CM | HERRERA MIGUEL |
| 000BP55006 | NPD1412189 | DARREN KAUFMAN MD | 07/01/97 | 09/30/97 | CANCEL CM | KAUFMAN DARREN |
| 000BP55007 | NPD1412189 | GEOFFREY S MANN MD | 07/01/97 | 09/30/97 | CANCEL CM | MANN GEOFFREY S |
| 000BP55008 | NPD1412189 | ALLEN E MESKE MD | 07/01/97 | 09/30/97 | CANCEL CM | MESKE ALLEN E |
| 000BP55009 | NPD1412189 | DAVID R NATEMAN MD | 07/01/97 | 09/30/97 | CANCEL CM | NATEMAN DAVID R |
| 000BP55010 | NPD1412189 | HARRY R NATEMAN MD | 07/01/97 | 09/30/97 | CANCEL CM | NATEMAN HARRY R |
| 000BP55011 | NPD1412189 | PERRY W ROBINSON MD | 07/01/97 | 09/30/97 | CANCEL CM | ROBINSON PERRY |
| 000BP55012 | NPD1412189 | CHARLES SANZ MD | 07/01/97 | 09/30/97 | CANCEL CM | SANZ CHARLES |
| 000BP55013 | NPD1412189 | THOMAS M STEED MD | 07/01/97 | 09/30/97 | CANCEL CM | STEED THOMAS M |
| 000BP55014 | NPD1412189 | CAROL M THOMPSON MD | 07/01/97 | 09/30/97 | CANCEL CM | THOMPSON CAROL |
| 000BP55015 | NPD1412189 | MARK H WEINSTEIN MD | 07/01/97 | 09/30/97 | CANCEL CM | WEINSTEIN MARK |
| 000BP55016 | NPD1412189 | CESAR FERNANDEZ PA | 07/01/97 | 09/30/97 | CANCEL CM | FERNANDEZ CESAR |
| 000BP55017 | NPD1412189 | JAMA LEE HARE PA | 07/01/97 | 09/30/97 | CANCEL CM | HARE JAMA LEE |
| 000BP55018 | NPD1412189 | CHRISTOPHER HAYES PA | 07/01/97 | 09/30/97 | CANCEL CM | HAYES CHRISTOPH |
| 000BP55019 | NPD1412189 | KATHLEEN J NATEMAN NP | 07/01/97 | 09/30/97 | CANCEL CM | NATEMAN KATHLEE |
| 000BP55020 | NPD1412189 | PHILIP T NIX PA | 07/01/97 | 09/30/97 | CANCEL CM | NIX PHILIP T |
| 000BP55021 | NPD1412189 | SUSAN PERRY NP | 07/01/97 | 09/30/97 | CANCEL CM | PERRY SUSAN |
| 000BP56001 | NPD1412189 | ROBERT T SALZMAN MD | 08/20/97 | 09/30/97 | CANCEL CM | SALZMAN ROBERT |
| 000BP56002 | NPD1412189 | ERIC A SHELDON MD | 08/20/97 | 09/30/97 | CANCEL CM | SHELDON ERIC A |
| 000BP56003 | NPD1412189 | JAIME A PACHON MD | 07/01/97 | 09/30/97 | CANCEL CM | PACHON JAIME A |
| 000BP57001 | NPD1412189 | HUGO DIEZ JR MD | 07/01/97 | 09/30/97 | CANCEL CM | DIEZ HUGO |
| 000BP58001 | NPD1412189 | ALLAN FIENGOLD MD | 07/01/97 | 09/30/97 | CANCEL CM | FIENGOLD ALLAN |
| 000BP59001 | NPD1412189 | RODNEY G BENJAMIN MD | 07/01/97 | 09/30/97 | CANCEL CM | BENJAMIN RODNEY |
| 000BP61001 | NPD1412189 | PEDRO P LLANEZA MD | 07/01/97 | 09/30/97 | CANCEL CM | LLANEZA PEDRO P |
| 000BP62001 | NPD1412189 | RAMON QUESADA MD | 07/07/97 | 09/30/97 | CANCEL CM | QUESADA RAMON |
| 000BP62002 | NPD1412189 | BILLY K YEN MD | 07/01/97 | 09/30/97 | CANCEL CM | YEN BILLY K |
| 000BP63002 | NPD1412189 | DAVID SAN MIGUEL MD | 09/01/97 | 09/01/97 | RUN-OFF | SANMIGUEL DAVID |
| 000BP64001 | NPD1412189 | IRMA REY MD | 09/01/97 | 09/30/97 | CANCEL CM | REY IRMA |
| | NPD1412194 | TEAM PHYSICIANS OF ARIZONA | | | | |
| 46254 | NPD1412194 | BRUCE ADAMS MD | 01/01/98 | 12/31/98 | CANCEL CM | ADAMS BRUCE |
| 46255 | NPD1412194 | MICHAEL ALBERTI MD | 01/01/98 | 12/31/98 | CANCEL CM | ALBERTI MICHAEL |
| 46256 | NPD1412194 | JOHN R ALVEY DO | 01/01/98 | 12/31/98 | CANCEL CM | ALVEY JOHN R |
| 46257 | NPD1412194 | BRADLEY B BAILEY MD | 01/01/98 | 12/31/98 | CANCEL CM | BAILEY BRADLEY |
| 46261 | NPD1412194 | BENTLEY J BOBROW MD | 01/01/98 | 12/31/98 | CANCEL CM | BOBROW BENTLEY |
| 46258 | NPD1412194 | DAVID E BOESCH MD | 01/01/98 | 12/31/98 | CANCEL CM | BOESCH DAVID E |
| 46259 | NPD1412194 | TRINA BOGART MD | 01/01/98 | 12/31/98 | CANCEL CM | BOGART TRINA |
| 46260 | NPD1412194 | THOMAS BOSTWICK MD | 01/01/98 | 12/31/98 | CANCEL CM | BOSTWICK THOMAS |
| 46262 | NPD1412194 | DAWN BROKAW MD | 01/01/98 | 12/31/98 | CANCEL CM | BROKAW DAWN |
| 46350 | NPD1412194 | TONI BROPHY MD | 03/26/98 | 12/31/98 | CANCEL CM | BROPHY TONI |
| 46263 | NPD1412194 | CONNIE JO RUSSELL BROWN DO | 01/01/98 | 12/31/98 | CANCEL CM | BROWN CONNIE JO |
| 46264 | NPD1412194 | MARC BROWN MD | 01/01/98 | 12/31/98 | CANCEL CM | BROWN MARC |
| 46265 | NPD1412194 | ROBERT G BROWN MD | 01/01/98 | 12/31/98 | CANCEL CM | BROWN ROBERT G |
| 46266 | NPD1412194 | MICHAEL L BUENAFE MD | 01/01/98 | 12/31/98 | CANCEL CM | BUENAFE MICHAEL |
| 46253 | NPD1412194 | BRADLEY BUTLER MD | 11/01/97 | 12/31/98 | CANCEL CM | BUTLER BRADLEY |
| 46267 | NPD1412194 | RICHARD W CARLISLE MD | 01/01/98 | 12/31/98 | CANCEL CM | CARLISLE RICHAR |
| 46268 | NPD1412194 | JAMES P CARTY DO | 01/01/98 | 12/31/98 | CANCEL CM | CARTY JAMES P |
| 46362 | NPD1412194 | LAWRENCE CHERISH DO | 11/17/98 | 12/31/98 | CANCEL CM | CHERISH LAWRENC |
| 46269 | NPD1412194 | STEPHEN CHIN MD | 01/01/98 | 12/31/98 | CANCEL CM | CHIN STEPHEN |
| 46306 | NPD1412194 | HAROLD COHEN MD | 01/01/98 | 12/31/98 | CANCEL CM | COHEN HAROLD |

Exhibit B

| SCPIE POLICY # | RELIANCE POLICY # | INSURED NAME | POL EFF DATE | CANCEL DATE | POLICY STATUS | SORT NAME |
|---|---|---|---|---|---|---|
| 46270 | NPD1412194 | DAVID A CONNOR MD | 01/01/98 | 12/31/98 | CANCEL CM | CONNOR DAVID A |
| 46359 | NPD1412194 | ANNE-MARIE COSIJNS MD | 09/25/98 | 12/31/98 | CANCEL CM | COSIJNS ANNEMAR |
| 46271 | NPD1412194 | DUANE CRIST MD | 01/01/98 | 12/31/98 | CANCEL CM | CRIST DUANE |
| 46360 | NPD1412194 | KELLY CULLEN DO | 12/01/98 | 12/31/98 | CANCEL CM | CULLEN KELLY |
| 46272 | NPD1412194 | CHARLENE M DEHAVEN MD | 01/01/98 | 12/31/98 | CANCEL CM | DEHAVEN CHARLEN |
| 46274 | NPD1412194 | DAVID W DICKERSON MD | 01/01/98 | 12/31/98 | CANCEL CM | DICKERSON DAVID |
| 46275 | NPD1412194 | BRYAN DUNN MD | 01/01/98 | 12/31/98 | CANCEL CM | DUNN BRYAN |
| 46276 | NPD1412194 | EUGENE MARK EBY MD | 01/01/98 | 12/31/98 | CANCEL CM | EBY EUGENE MARK |
| 46277 | NPD1412194 | MICHAEL T EGAN MD | 01/01/98 | 12/31/98 | CANCEL CM | EGAN MICHAEL T |
| 105651 | NPD1412194 | TEAM PHYSICIANS OF ARIZONA | 01/01/98 | 12/31/98 | CANCEL CM | EMERGENCY PHYSI |
| 46278 | NPD1412194 | WILLIAM T EVANS MD | 01/01/98 | 12/31/98 | CANCEL CM | EVANS WILLIAM T |
| 46279 | NPD1412194 | FREEMAN FAVORS MD | 01/01/98 | 12/31/98 | CANCEL CM | FAVORS FREEMAN |
| 46280 | NPD1412194 | GREGORY FERMANN MD | 01/01/98 | 12/31/98 | CANCEL CM | FERMANN GREGORY |
| 46344 | NPD1412194 | CHARLES FINCH MD | 02/01/98 | 12/31/98 | CANCEL CM | FINCH CHARLES |
| 46281 | NPD1412194 | ROBERT M FISHER MD | 01/01/98 | 12/31/98 | CANCEL CM | FISHER ROBERT M |
| 46282 | NPD1412194 | CHARLES B FOOE MD | 01/01/98 | 12/31/98 | CANCEL CM | FOOE CHARLES B |
| 46283 | NPD1412194 | ROBERT FRENCH MD | 01/01/98 | 12/31/98 | CANCEL CM | FRENCH ROBERT |
| 46284 | NPD1412194 | WILLIAM F FULTON JR MD | 01/01/98 | 12/31/98 | CANCEL CM | FULTON WILLIAM |
| 46285 | NPD1412194 | GARTH A GEMAR MD | 01/01/98 | 12/31/98 | CANCEL CM | GEMAR GARTH A |
| 46286 | NPD1412194 | ROBERT GONZALEZ MD | 01/01/98 | 12/31/98 | CANCEL CM | GONZALEZ ROBERT |
| 46287 | NPD1412194 | KIM GRAEME MD | 01/01/98 | 12/31/98 | CANCEL CM | GRAEME KIM |
| 46351 | NPD1412194 | KEVIN J HASELHORST MD | 03/26/98 | 12/31/98 | CANCEL CM | HASELHORST KEVI |
| 46361 | NPD1412194 | CURTIS WAYNE HENDERSON MD | 12/01/98 | 12/31/98 | CANCEL CM | HENDERSON CURTI |
| 46288 | NPD1412194 | ANDRES HERNANDEZ MD | 01/01/98 | 12/31/98 | CANCEL CM | HERNANDEZ ANDRE |
| 46608 | NPD1412194 | THOMAS J HIGGINS JR MD | 07/01/98 | 12/31/98 | CANCEL CM | HIGGINS THOMAS |
| 46289 | NPD1412194 | RICHARD N HORNE MD | 01/01/98 | 12/31/98 | CANCEL CM | HORNE RICHARD N |
| 46346 | NPD1412194 | PAUL JOHNSON MD | 01/01/98 | 12/31/98 | CANCEL CM | JOHNSON PAUL |
| 46290 | NPD1412194 | STEPHEN L JOHNSON MD | 01/01/98 | 12/31/98 | CANCEL CM | JOHNSON STEPHEN |
| 46291 | NPD1412194 | DANIEL KATES MD | 01/01/98 | 12/31/98 | CANCEL CM | KATES DANIEL |
| 46292 | NPD1412194 | LOUIS J KATZMAN MD | 01/01/98 | 12/31/98 | CANCEL CM | KATZMAN LOUIS J |
| 46345 | NPD1412194 | JOSEPH KEZELE JR MD | 01/01/98 | 12/31/98 | CANCEL CM | KEZELE JOSEPH |
| 46293 | NPD1412194 | PAUL KOLECKI MD | 01/01/98 | 12/31/98 | CANCEL CM | KOLECKI PAUL |
| 46294 | NPD1412194 | THOMAS C KUPKA MD | 01/01/98 | 12/31/98 | CANCEL CM | KUPKA THOMAS C |
| 46295 | NPD1412194 | RICHARD KURBAT MD | 01/01/98 | 12/31/98 | CANCEL CM | KURBAT RICHARD |
| 46296 | NPD1412194 | ROBERT F LANEY MD | 01/01/98 | 12/31/98 | CANCEL CM | LANEY ROBERT F |
| 46297 | NPD1412194 | WILLIE F LANSDEN MD | 01/01/98 | 12/31/98 | CANCEL CM | LANSDEN WILLIE |
| 46298 | NPD1412194 | ALICE SHING YIH LEE MD | 01/01/98 | 12/31/98 | CANCEL CM | LEE ALICE SHING |
| 46299 | NPD1412194 | MARK LOGAN MD | 01/01/98 | 12/31/98 | CANCEL CM | LOGAN MARK |
| 46300 | NPD1412194 | HARRY YEE KAU LUM MD | 01/01/98 | 12/31/98 | CANCEL CM | LUM HARRY YEE K |
| 46304 | NPD1412194 | TREIS R LUM DO | 01/01/98 | 12/31/98 | CANCEL CM | LUM TREIS R |
| 46307 | NPD1412194 | THOMAD D MARSHALL MD | 01/01/98 | 12/31/98 | CANCEL CM | MARSHALL THOMAD |
| 46305 | NPD1412194 | KATHLEEN MCCORMICK MD | 01/01/98 | 12/31/98 | CANCEL CM | MCCORMICK KATHL |
| 46309 | NPD1412194 | GUY MERZ DO | 01/01/98 | 12/31/98 | CANCEL CM | MERZ GUY |
| 46308 | NPD1412194 | BERNHARD METCALF MD | 01/01/98 | 12/31/98 | CANCEL CM | METCALF BERNHAR |
| 46310 | NPD1412194 | MICHAEL JOSEPH MORIARTY MD | 01/01/98 | 12/31/98 | CANCEL CM | MORIARTY MICHAE |
| 46355 | NPD1412194 | WILLIAM R MOSTOW MD | 08/01/98 | 12/31/98 | CANCEL CM | MOSTOW WILLIAM |
| 46311 | NPD1412194 | ROBERT K NIMLOS MD | 01/01/98 | 12/31/98 | CANCEL CM | NIMLOS ROBERT K |
| 46312 | NPD1412194 | KERRY W NOVAK MD | 01/01/98 | 12/31/98 | CANCEL CM | NOVAK KERRY W |
| 46313 | NPD1412194 | ROBERT S ORAVA MD | 01/01/98 | 12/31/98 | CANCEL CM | ORAVA ROBERT S |
| 46315 | NPD1412194 | THOMAS C PATTERSON MD | 01/01/98 | 12/31/98 | CANCEL CM | PATTERSON THOMA |
| 46316 | NPD1412194 | KATHRYN MULLINS PERKINS MD | 01/01/98 | 12/31/98 | CANCEL CM | PERKINS KATHRYN |
| 46349 | NPD1412194 | FRANK M PRICE MD | 03/26/98 | 12/31/98 | CANCEL CM | PRICE FRANK M |
| 46317 | NPD1412194 | TOMMY CHRIS PRICE MD | 01/01/98 | 12/31/98 | CANCEL CM | PRICE TOMMY CHR |
| 46319 | NPD1412194 | MELANIE L ROSE MD | 01/01/98 | 12/31/98 | CANCEL CM | ROSE MELANIE L |
| 46246 | NPD1412194 | GENE E ROSTERMUNDT DO | 04/05/98 | 12/31/98 | CANCEL CM | ROSTERMUNDT GEN |
| 46320 | NPD1412194 | PHILLIP SABA MD | 01/01/98 | 12/31/98 | CANCEL CM | SABA PHILLIP |
| 46321 | NPD1412194 | MICHAEL T SALWITZ MD | 01/01/98 | 12/31/98 | CANCEL CM | SALWITZ MICHAEL |
| 46322 | NPD1412194 | KELLY SCHLOSBERG MD | 01/01/98 | 12/31/98 | CANCEL CM | SCHLOSBERG KELL |
| 46323 | NPD1412194 | WILLIAM V SCHNEIDER DO | 01/01/98 | 12/31/98 | CANCEL CM | SCHNEIDER WILLI |
| 46324 | NPD1412194 | STEFANIE SCHROEDER MD | 01/01/98 | 12/31/98 | CANCEL CM | SCHROEDER STEFA |
| 46326 | NPD1412194 | JACK F SEAVY JR MD | 01/01/98 | 12/31/98 | CANCEL CM | SEAVY JACK F |
| 46325 | NPD1412194 | GARY SEPTON MD | 01/01/98 | 12/31/98 | CANCEL CM | SEPTON GARY |
| 46610 | NPD1412194 | JAMES M SEVERANCE MD | 12/30/98 | 12/31/98 | CANCEL CM | SEVERANCE JAMES |
| 46244 | NPD1412194 | GEORGE SHEPARD III MD | 03/30/98 | 12/31/98 | CANCEL CM | SHEPARD GEORGE |
| 46352 | NPD1412194 | PAULA J SILIDES MD | 07/01/98 | 12/31/98 | CANCEL CM | SILIDES PAULA J |
| 46327 | NPD1412194 | DAVID SLATTERY MD | 01/01/98 | 12/31/98 | CANCEL CM | SLATTERY DAVID |
| 46328 | NPD1412194 | ALISON SMITH MD | 01/01/98 | 12/31/98 | CANCEL CM | SMITH ALISON |
| 46329 | NPD1412194 | GARY M SOLLARS MD | 01/01/98 | 12/31/98 | CANCEL CM | SOLLARS GARY M |
| 46330 | NPD1412194 | KENDALL STYSKAL MD | 01/01/98 | 12/31/98 | CANCEL CM | STYSKAL KENDALL |
| 46245 | NPD1412194 | JEFFREY SUCHARD MD | 04/05/98 | 12/31/98 | CANCEL CM | SUCHARD JEFFREY |
| 46331 | NPD1412194 | MARCIE T TORRES MD | 01/01/98 | 12/31/98 | CANCEL CM | TORRES MARCIE T |
| 46252 | NPD1412194 | WINSTON TRIPP MD | 01/01/98 | 12/31/98 | CANCEL CM | TRIPP WINSTON |
| 46332 | NPD1412194 | JUDITH TUCK MD | 01/01/98 | 12/31/98 | CANCEL CM | TUCK JUDITH |
| 46333 | NPD1412194 | LOREN MACK TURLEY DO | 01/01/98 | 12/31/98 | CANCEL CM | TURLEY LOREN MA |
| 46336 | NPD1412194 | ROBERT A VAVRICK MD | 01/01/98 | 12/31/98 | CANCEL CM | VAVRICK ROBERT |

11/14/2001

Exhibit B

| SCPIE POLICY # | RELIANCE POLICY # | INSURED NAME | POL EFF DATE | CANCEL DATE | POLICY STATUS | SORT NAME |
|---|---|---|---|---|---|---|
| 46334 | NPD1412194 | THOMAS A VETTO MD | 01/01/98 | 12/31/98 | CANCEL CM | VETTO THOMAS A |
| 46335 | NPD1412194 | JAMES W VRABEL MD | 01/01/98 | 12/31/98 | CANCEL CM | VRABEL JAMES W |
| 46337 | NPD1412194 | JAMES WALKER MD | 01/01/98 | 12/31/98 | CANCEL CM | WALKER JAMES |
| 46338 | NPD1412194 | KEVIN WALLACE MD | 01/01/98 | 12/31/98 | CANCEL CM | WALLACE KEVIN |
| 46339 | NPD1412194 | RICHARD R WARRINGTON MD | 01/01/98 | 12/31/98 | CANCEL CM | WARRINGTON RICH |
| 46340 | NPD1412194 | SCOTT WASSERMAN MD | 01/01/98 | 12/31/98 | CANCEL CM | WASSERMAN SCOTT |
| 46341 | NPD1412194 | DANIEL H ZIEGLER MD | 01/01/98 | 12/31/98 | CANCEL CM | ZIEGLER DANIEL |
| | NPD1412195 | JJ&R EMER MED GRP OF FL INC | | | | |
| 46222 | NPD1412195 | DANNY ABBRUZZESE MD | 06/13/97 | 06/12/00 | CANCEL CM | ABBRUZZESE DANN |
| 46225 | NPD1412195 | CHARLES D AKES MD | 06/13/97 | 06/12/00 | CANCEL CM | AKES CHARLES D |
| 46618 | NPD1412195 | VAQAR ALI MD | 10/09/99 | 06/12/00 | CANCEL CM | ALI VAQAR |
| 46199 | NPD1412195 | LARRY R BACHLE DO | 06/13/97 | 06/12/00 | CANCEL CM | BACHLE LARRY R |
| 46226 | NPD1412195 | CARLOS M BADIOLA MD | 06/13/97 | 06/12/00 | CANCEL CM | BADIOLA CARLOS |
| 46223 | NPD1412195 | ALBERT BARTHOLOMEW MD | 06/13/97 | 06/12/00 | CANCEL CM | BARTHOLOMEW ALB |
| 46214 | NPD1412195 | DENNIS R BASSETTI MD | 06/13/97 | 06/12/00 | CANCEL CM | BASSETTI DENNIS |
| 46190 | NPD1412195 | MIGUEL F BELTRE MD | 06/13/97 | 06/12/00 | CANCEL CM | BELTRE MIGUEL F |
| 46342 | NPD1412195 | DAVID BRIDGES MD | 11/02/97 | 06/12/00 | CANCEL CM | BRIDGES DAVID |
| 46232 | NPD1412195 | PHILIP BROWNING MD | 11/01/97 | 06/12/00 | CANCEL CM | BROWNING PHILIP |
| 46237 | NPD1412195 | WILLIAM R BURKEY MD | 03/01/98 | 06/12/00 | CANCEL CM | BURKEY WILLIAM |
| 46230 | NPD1412195 | BRON BURWELL MD | 11/01/97 | 06/12/00 | CANCEL CM | BURWELL BRON |
| 46227 | NPD1412195 | CATHERINE L CARRUBBA MD | 06/13/97 | 06/12/00 | CANCEL CM | CARRUBBA CATHER |
| 46353 | NPD1412195 | KEITH A CLIFTON MD | 08/01/98 | 03/31/00 | CANCEL CM | CLIFTON KEITH A |
| 46200 | NPD1412195 | BRIAN COBB MD | 06/13/97 | 06/12/00 | CANCEL CM | COBB BRIAN |
| 46600 | NPD1412195 | FRED A COLLATZ III MD | 07/01/98 | 01/12/00 | CANCEL CM | COLLATZ FRED A |
| 46602 | NPD1412195 | DOROTHY ELLEN COMEAU PHD MD | 07/05/98 | 01/12/00 | CANCEL CM | COMEAU DOROTHY |
| 46358 | NPD1412195 | ANITA CORNETT MD | 09/05/98 | 06/12/00 | CANCEL CM | CORNETT ANITA |
| 46231 | NPD1412195 | JOSEPH MICHAEL CRANE MD | 03/05/98 | 06/12/00 | CANCEL CM | CRANE JOSEPH MI |
| 46228 | NPD1412195 | WILLIAM E CRANKSHAW MD | 06/13/97 | 06/12/00 | CANCEL CM | CRANKSHAW WILLI |
| 46215 | NPD1412195 | MICHAEL CROWE DO | 06/13/97 | 06/12/00 | CANCEL CM | CROWE MICHAEL |
| 46207 | NPD1412195 | MICHAEL A DEPAUW DO | 06/13/97 | 06/12/00 | CANCEL CM | DEPAUW MICHAEL |
| 46601 | NPD1412195 | HENRY M EUGENIO MD | 07/01/98 | 01/12/00 | CANCEL CM | EUGENIO HENRY M |
| 46354 | NPD1412195 | JACQUELINE GRACE C EUGENIO MD | 07/01/98 | 01/12/00 | CANCEL CM | EUGENIO JACQUEL |
| 46191 | NPD1412195 | ALEXIS A FEBRE MD | 06/13/97 | 06/12/00 | CANCEL CM | FEBRE ALEXIS A |
| 46187 | NPD1412195 | MARIA T FEDOR MD | 06/13/97 | 06/12/00 | CANCEL CM | FEDOR MARIA T |
| 46192 | NPD1412195 | DONALD B GELDART MD | 06/13/97 | 06/12/00 | CANCEL CM | GELDART DONALD |
| 46208 | NPD1412195 | DERALD GINGERICH MD | 06/13/97 | 06/12/00 | CANCEL CM | GINGERICH DERAL |
| 46356 | NPD1412195 | MARTHA M GROUT MD | 09/01/98 | 12/31/98 | CANCEL CM | GROUT MARTHA M |
| 46229 | NPD1412195 | VIRIND D GUPTA MD | 06/13/97 | 06/12/00 | CANCEL CM | GUPTA VIRIND D |
| 46606 | NPD1412195 | AJMAL HAMEED MD | 07/01/98 | 01/12/00 | CANCEL CM | HAMEED AJMAL |
| 46216 | NPD1412195 | MICHAEL HARRY MD | 06/13/97 | 06/12/00 | CANCEL CM | HARRY MICHAEL |
| 46620 | NPD1412195 | KEVIN HATTAWAY MD | 11/06/99 | 06/12/00 | CANCEL CM | HATTAWAY KEVIN |
| 46217 | NPD1412195 | FRANCIS E HORRIGAN MD | 06/13/97 | 06/12/00 | CANCEL CM | HORRIGAN FRANCI |
| 46605 | NPD1412195 | ROBERT C HOSKINS MD | 07/01/98 | 01/12/00 | CANCEL CM | HOSKINS ROBERT |
| 46243 | NPD1412195 | CHUKWUEMEKA V IKPEAZU MD | 06/01/98 | 06/12/00 | CANCEL CM | IKPEAZU CHUKWUE |
| 46193 | NPD1412195 | BURKE L JACKSON MD | 06/13/97 | 06/12/00 | CANCEL CM | JACKSON BURKE L |
| 46233 | NPD1412195 | ADHI JAYARAMAN MD | 11/01/97 | 06/12/00 | CANCEL CM | JAYARAMAN ADHI |
| 105650 | NPD1412195 | JJ&R EMER MED GRP OF FL INC | 06/13/97 | 06/12/00 | CANCEL CM | JJ&R EMER MED G |
| 46242 | NPD1412195 | DONALD F JONES MD | 03/05/98 | 06/12/00 | CANCEL CM | JONES DONALD F |
| 46343 | NPD1412195 | MAGDY A KALDAS MD | 02/01/98 | 06/12/00 | CANCEL CM | KALDAS MAGDY A |
| 46218 | NPD1412195 | DANA G KILLAM MD | 06/13/97 | 06/12/00 | CANCEL CM | KILLAM DANA G |
| 46194 | NPD1412195 | MYRON L KWAN MD | 06/13/97 | 06/12/00 | CANCEL CM | KWAN MYRON L |
| 46210 | NPD1412195 | BRIAN LETTS MD | 06/13/97 | 06/12/00 | CANCEL CM | LETTS BRIAN |
| 46219 | NPD1412195 | JACQUELINE LINDSEY MD | 06/13/97 | 06/12/00 | CANCEL CM | LINDSEY JACQUEL |
| 46211 | NPD1412195 | ANDREW Z LISKIEWICZ MD | 06/13/97 | 06/12/00 | CANCEL CM | LISKIEWICZ ANDR |
| 46603 | NPD1412195 | GILBERT MAMAUAG MD | 07/01/98 | 01/12/00 | CANCEL CM | MAMAUAG GILBERT |
| 46188 | NPD1412195 | JOHN MATHEWSON MD | 06/13/97 | 06/12/00 | CANCEL CM | MATHEWSON JOHN |
| 46614 | NPD1412195 | JOHN P MCCARTHY MD | 09/01/99 | 06/12/00 | CANCEL CM | MCCARTHY JOHN P |
| 46220 | NPD1412195 | JAMES L MCMULLEN MD | 06/13/97 | 06/12/00 | CANCEL CM | MCMULLEN JAMES |
| 46212 | NPD1412195 | DOUG R MORROW DO | 06/13/97 | 06/12/00 | CANCEL CM | MORROW DOUG R |
| 46235 | NPD1412195 | JAN MRANI MD | 11/01/97 | 06/12/00 | CANCEL CM | MRANI JAN |
| 46347 | NPD1412195 | RANJANI NAGARAJAN MD | 01/27/98 | 06/12/00 | CANCEL CM | NAGARAJAN RANJA |
| 46236 | NPD1412195 | EDWARD PELOTE MD | 11/01/97 | 06/12/00 | CANCEL CM | PELOTE EDWARD |
| 46196 | NPD1412195 | LUIS PENA MD | 06/13/97 | 06/12/00 | CANCEL CM | PENA LUIS |
| 46213 | NPD1412195 | PETER E PENICO MD | 06/13/97 | 06/12/00 | CANCEL CM | PENICO PETER E |
| 46078 | NPD1412195 | FRANK A PERRY JR MD | 11/01/97 | 06/12/00 | CANCEL CM | PERRY FRANK A |
| 46209 | NPD1412195 | RANDY PILGRIM MD | 06/13/97 | 06/12/00 | CANCEL CM | PILGRIM RANDY |
| 46240 | NPD1412195 | MARIO QUINTERO MD | 11/25/97 | 06/12/00 | CANCEL CM | QUINTERO MARIO |
| 46195 | NPD1412195 | CAROL L ROBERTS MD | 06/13/97 | 06/12/00 | CANCEL CM | ROBERTS CAROL L |
| 46080 | NPD1412195 | TIMOTHY ROBERTSON DO | 11/12/99 | 06/12/00 | CANCEL CM | ROBERTSON TIMOT |
| 46604 | NPD1412195 | REINHARD E ROTT MD | 06/24/98 | 06/12/00 | CANCEL CM | ROTT REINHARD E |
| 46221 | NPD1412195 | MARTIN SCHNELL MD | 06/13/97 | 06/12/00 | CANCEL CM | SCHNELL MARTIN |
| 46613 | NPD1412195 | OWEN R SMITH MD | 04/01/99 | 06/12/00 | CANCEL CM | SMITH OWEN R |
| 46615 | NPD1412195 | STEPHEN SNYDER MD | 09/13/99 | 06/12/00 | CANCEL CM | SNYDER STEPHEN |
| 46619 | NPD1412195 | NAHED S SOBHY MD | 10/15/99 | 06/12/00 | CANCEL CM | SOBHY NAHED S |

6 of 7

Exhibit B

| SCPIE POLICY # | RELIANCE POLICY # | INSURED NAME | POL EFF DATE | CANCEL DATE | POLICY STATUS | SORT NAME | |
|---|---|---|---|---|---|---|---|
| 46607 | NPD1412195 | RENUKA SWAMINATHAN MD | 08/01/98 | 01/12/00 | CANCEL CM | SWAMINATHAN REN | |
| 46197 | NPD1412195 | RAY H TANGUNAN MD | 06/13/97 | 06/12/00 | CANCEL CM | TANGUNAN RAY H | |
| 46241 | NPD1412195 | DUSAN TEODOROVIC MD | 04/01/98 | 06/12/00 | CANCEL CM | TEODOROVIC DUSA | |
| 46224 | NPD1412195 | JAMES THOENE MD | 05/13/97 | 06/12/00 | CANCEL CM | THOENE JAMES | |
| 46348 | NPD1412195 | SONNEPAL VENKAT MD | 02/01/98 | 06/12/00 | CANCEL CM | VENKAT SONNEPAL | |
| 46198 | NPD1412195 | KATHLEEN M WELCH-WILSON MD | 06/13/97 | 06/12/00 | CANCEL CM | WELCHWILSON KAT | |
| 46617 | NPD1412195 | HUBERT WILLIAMS MD | 10/01/99 | 06/12/00 | CANCEL CM | WILLIAMS HUBERT | |
| 46189 | NPD1412195 | HAROLD A YOUNT MD | 06/13/97 | 06/12/00 | CANCEL CM | YOUNT HAROLD A | |
| HPL1000032 | NPD1412196 | EMERALD HEALTHCARE, INC. | 09/01/98 | 09/01/99 | CANCEL OCC | EMERALD HEALTHC | |
| HPL1000033 | NPD1412198 | SOUTHERN MANAGEMENT SERVICES | 11/01/98 | 08/09/99 | CANCEL OCC | SOUTHERN MANAGE | |
| | NPD1412001 | PAUL GIETZEN, M.D. | 01/01/99 | 01/01/00 | CANCEL CM | GIETZEN | 1/99-6/99 |
| | NPD1412002 | JAMES SIRAJUDDIN, M.D. | 01/01/99 | 01/01/00 | CANCEL CM | SIRAJUDDIN | 1/99-12/99 |
| | NPD1412005 | WELBOURNE D. JOHNSON M.D. | 08/03/99 | 11/03/99 | CANCEL CM | JOHNSON | 08/99 - 11/99 |
| | NPD1412008 | NOSRATOLLAH GHAEMMAGHANI MD | 10/09/99 | 08/02/00 | CANCEL CM | GHAEMMAGHANI | |

## **EXHIBIT C**

**Reconciliation**

Exhibit C

S:CPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
P emium Bordereau
For the Collection Month of December, 1998

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412020/3172 | Pacifica Hospital of the Valley | CA | 10/01/97 | 10/01/98 | Jul-98 | 34,022.78 | 3,572.39 | 1,701.14 | 28,749.25 |
| NPD1412020/3172 | Pacifica Hospital of the Valley | CA | 10/01/97 | 10/01/98 | Aug-98 | 33,209.70 | 3,487.02 | 1,660.49 | 28,062.20 |
| NPD1412020/3172 | Pacifica Hospital of the Valley | CA | 10/01/97 | 10/01/98 | Sep-98 | 33,326.10 | 3,499.24 | 1,666.31 | 28,160.55 |
| NPD1412143/0897 | Grand River Hospital District | CO | 10/01/97 | 10/01/98 | Jul-98 | 2,646.98 | 198.52 | 132.35 | 2,316.11 |
| NPD1412143/0897 | Grand River Hospital District | CO | 10/01/97 | 10/01/98 | Sep-98 | 8,858.45 | 664.38 | 442.92 | 7,751.14 |
| NPD1412173/3119 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Nov-98 | 1,969.93 | 206.84 | 98.50 | 1,664.59 |
| NPD1412113/3200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Nov-98 | 2,203.11 | 165.23 | 110.16 | 1,927.72 |
| | Hadley MemorialHospital | DC | 07/01/98 | 10/01/98 | Jul-98 | 32,897.92 | 3,289.79 | 1,644.90 | 27,963.23 |
| NPD1412017/0926 | Mesquite Community Hospital | TX | 09/01/97 | 09/01/98 | Nov-98 | 35,277.05 | 2,645.78 | 1,763.85 | 30,867.42 |
| **Total December Collection** | | | | | | 184,412.02 | 17,729.20 | 9,220.60 | 157,462.21 |

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of January, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412020/3172 | Pacifica Hospital of the Valley | CA | 10/01/97 | 10/01/98 | Oct-98 | 26,153.91 | 2,746.16 | 1,307.70 | 22,100.05 |
| NPD1412020/3172 | Pacifica Hospital of the Valley | CA | 10/01/97 | 10/01/98 | Nov-98 | 25,893.42 | 2,718.81 | 1,294.67 | 21,879.94 |
| NPD1412143/0897 | Grand River Hospital District | CO | 10/01/97 | 10/01/98 | Nov-98 | 8,511.79 | 638.36 | 425.59 | 7,447.82 |
| NPD1412173/3119 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Dec-98 | 2,068.32 | 217.17 | 103.42 | 1,747.73 |
| NPD1412113/3200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Dec-98 | 2,064.71 | 154.85 | 103.24 | 1,806.62 |
| NPB0139660 | Hadley MemorialHospital | DC | 07/01/98 | | Aug-98 | 16,448.96 | 1,644.90 | 822.45 | 13,981.62 |
| NPB0139660 | Hadley MemorialHospital | DC | 07/01/98 | | Sep-98 | 16,448.96 | 1,644.90 | 822.45 | 13,981.62 |
| NPB0139660 | Hadley MemorialHospital | DC | 07/01/98 | | Oct-98 | 12,578.62 | 1,257.86 | 628.93 | 10,691.83 |
| NPD1412198 | Southern Management Services | FL | 11/01/98 | | 11/98-1/99 | 69,734.25 | 6,973.43 | 3,486.71 | 59,274.11 |
| NPD1412017/0926 | Mesquite Community Hospital | TX | 09/01/97 | 09/01/98 | Dec-98 | 35,277.05 | 0.00 | 1,763.85 | 33,513.20 |
| **Total January Collection** | | | | | | 215,179.99 | 17,996.46 | 10,759.00 | 186,424.53 |

Exhibit C

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of February, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| N-D1412020/3172 | Pacifica Hospital of the Valley | CA | 10/01/97 | 10/01/98 | Dec-98 | 36,656.29 | 3,848.91 | 1,832.81 | 30,974.57 |
| NPD1412143/0097 | Grand River Hospital District | CO | 10/01/97 | 10/01/98 | Dec-98 | 8,524.60 | 639.35 | 426.23 | 7,459.03 |
| NPD1412173/3119 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Jan-99 | 2,002.05 | 210.22 | 100.10 | 1,691.73 |
| N-TD1412113/3200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Jan-99 | 1,797.94 | 134.85 | 89.90 | 1,573.20 |
| NPD1412196 | Emerald Healthcare | FL | 10/13/98 | | R/P | (31,152.85) | (3,894.11) | (1,557.64) | (25,701.10) |
| NPD1412198 | Southern Management Service | FL | 11/01/98 | | 2/99-5/99 | 68,734.25 | 6,973.43 | 3,485.71 | 59,274.11 |
| | **Total February Collection** | | | | | 87,562.28 | 7,912.63 | 4,378.11 | 75,271.53 |

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of March, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412173/3119 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Feb-99 | 1,975.75 | 207.45 | 98.79 | 1,669.51 |
| NPD1412113/3200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Feb-99 | 1,847.80 | 138.59 | 92.39 | 1,616.83 |
| NPB0139660 | Hadley MemorialHospital | DC | 07/01/98 | | Nov-98 | 13,264.62 | 1,326.46 | 663.23 | 11,274.93 |
| NPD/1412196 | Emerald Healthcare | FL | 10/13/98 | | R/P | (7,581.44) | (947.68) | (379.07) | (6,254.69) |
| | Memphis Kidney & Dialysis | TN | 02/20/99 | | Annual | 12,000.00 | 840.00 | 600.00 | 10,560.00 |
| | **Total March Collection** | | | | | 21,506.73 | 1,564.82 | 1,075.34 | 18,866.57 |

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of April, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412143/0097 | Grand River Hospital District | CO | 10/01/97 | 10/01/98 | Oct-98 | 9,160.18 | 687.01 | 458.01 | 8,015.16 |
| NPD1412173/3119 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Mar-99 | 2,268.64 | 238.21 | 113.43 | 1,917.00 |
| NPD1412113/3200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Mar-99 | 2,298.43 | 172.38 | 114.92 | 2,011.13 |
| NPB139660 | Hadley MemorialHospital | DC | 07/01/98 | | Jan-99 | 11,938.16 | 1,193.82 | 596.91 | 10,147.44 |
| NPB139660 | Hadley MemorialHospital | DC | 07/01/98 | | Feb-99 | 11,938.16 | 1,193.82 | 596.91 | 10,147.44 |
| | **Total April Collection** | | | | | 37,603.57 | 3,485.23 | 1,880.18 | 32,238.16 |

2 of 6

Exhibit C

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of May, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412143/0897 | Grand River Hospital District | CO | 10/01/98 | 10/01/98 | Jan-99 | 8,821.64 | 661.62 | 441.08 | 7,718.94 |
| NPD1412173/3119 | Rangely District Hospital | CO | 10/01/98 | 10/01/98 | Apr-99 | 2,041.45 | 214.35 | 102.07 | 1,725.03 |
| NPD1412113/3200 | The Memorial Hospital | CO | 10/01/98 | 10/01/98 | Apr-99 | 2,407.13 | 180.53 | 120.36 | 2,106.24 |
| NPB139660 | Hadley Memorial-Hospital | DC | 07/01/98 | | Mar-99 | 13,264.63 | 1,326.46 | 663.23 | 11,274.94 |
| NPB139660 | Hadley Memorial-Hospital | DC | 07/01/98 | | Apr-99 | 13,264.63 | 1,326.46 | 663.23 | 11,274.94 |
| NPD1412194 | Emergency Physicians Inc. | AZ | 01/01/98 | 01/01/99 | 98 Audit | 64,964.99 | 2,403.70 | 3,248.25 | 59,313.04 |
| NPD1412196 | Emerald Healthcare | FL | 10/13/98 | | Endt | 21,314.00 | 2,664.25 | 1,065.70 | 17,584.05 |
| NPC1412059/3190 | Lower Florida Keys Health Sys | FL | 10/01/98 | 10/01/98 | Audit | 51,784.87 | 3,624.94 | 2,589.24 | 45,570.69 |
| NPD1412198 | Southern Management Service | FL | 11/01/98 | | 5/99-8/99 | 69,734.25 | 6,973.43 | 3,486.71 | 59,274.11 |
| NPD1412001 | Paul Gietzen, M.D. | MI | 01/01/99 | | 1/99-6/99 | 10,530.00 | 737.10 | 526.50 | 9,266.40 |
| NPD1412002 | James Sirajuddin, M.D. | MI | 01/01/99 | | 1/99-12/99 | 15,292.00 | 1,070.44 | 764.60 | 13,456.96 |
| NPD1412017/0926 | Mesquite Community Hospital | TX | 09/01/98 | | Jan-99 | 35,277.05 | 2,645.78 | 1,763.85 | 30,867.42 |
| NPD1412017/0926 | Mesquite Community Hospital | TX | 09/01/98 | | Feb-99 | 35,277.05 | 2,645.78 | 1,763.85 | 30,867.42 |
| NPD1412017/0926 | Mesquite Community Hospital | TX | 09/01/98 | | Mar-99 | 35,277.05 | 2,645.78 | 1,763.85 | 30,867.42 |
| NPD1412017/0926 | Mesquite Community Hospital | TX | 09/01/98 | 09/01/98 | Apr-99 | 35,277.05 | 2,645.78 | 1,763.85 | 30,867.42 |
| Total May Collection | | | | | | 414,527.79 | 31,766.41 | 20,726.39 | 362,034.99 |

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of June, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412173/3119 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | May-99 | 1,914.83 | 201.06 | 95.74 | 1,618.03 |
| NPD1412113/3200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | May-99 | 2,341.54 | 175.62 | 117.08 | 2,048.85 |
| NPB139660 | Hadley Memorial-Hospital | DC | 07/01/98 | | May-99 | 13,264.62 | 1,326.46 | 663.23 | 11,274.93 |
| NPD1412194 | Emergency Physicians Inc. | AZ | 01/01/98 | 01/01/99 | Audit | 9,924.26 | 367.20 | 496.21 | 9,060.85 |
| Total June Collection | | | | | | 27,445.25 | 2,070.33 | 1,372.26 | 24,002.66 |

Exhibit C

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of July, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| N?D1412173/3119 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Jun-99 | 2,032.12 | 213.37 | 101.61 | 1,717.14 |
| NPD1412113/3200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Jun-99 | 2,285.02 | 171.38 | 114.25 | 1,999.39 |
| N?B139660 | Hadley Memorial Hospital | DC | 07/01/98 | | May-99 | 13,264.62 | 1,326.46 | 663.23 | 11,274.93 |
| N?D1412017 | Mesquite Community Hospital | TX | 09/01/98 | 09/01/98 | May-99 | 35,277.05 | 0.00 | 1,763.85 | 33,513.20 |
| N?D1412017 | Mesquite Community Hospital | TX | 09/01/98 | 09/01/98 | Jun-99 | 35,277.05 | 0.00 | 1,763.85 | 33,513.20 |
| **Total July Collection** | | | | | | 88,135.86 | 1,711.21 | 4,406.79 | 82,017.86 |

S?PIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of August, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPC1412173 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Jul-99 | 2,095.39 | 220.02 | 104.77 | 1,770.60 |
| NPC1412113 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Jul-99 | 1,959.11 | 146.93 | 97.96 | 1,714.22 |
| NPD1412017 | Mesquite Community Hospital | TX | 09/01/98 | 09/01/98 | Jul-99 | 35,277.05 | 0.00 | 1,763.85 | 33,513.20 |
| **Total August Collection** | | | | | | 39,331.55 | 366.95 | 1,966.58 | 36,998.02 |

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of September, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412173 | Rangely District Hospital | CO | 10/01/97 | 10/01/98 | Aug-99 | 2,110.76 | 221.63 | 105.54 | 1,783.59 |
| NPD1412113 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Aug-99 | 2,418.29 | 181.37 | 120.91 | 2,116.00 |
| NPD1-12004 | Westport Senior Living | FL | 08/09/99 | | 0899 - 11/99 | 69,732.00 | 10,459.80 | 3,486.60 | 55,785.60 |
| NPD1412005 | Welbourne D. Johnson M.D. | TN | 08/09/99 | | 0899 - 11/99 | 5,127.00 | 769.05 | 256.35 | 4,101.60 |
| NPD1412017/0926 | Mesquite Community Hospital | TX | 09/01/98 | 09/01/98 | Aug-99 | 35,277.05 | 0.00 | 1,763.85 | 33,513.20 |
| **Total September Collection** | | | | | | 114,665.10 | 11,631.85 | 5,733.26 | 97,299.99 |

Exhibit C

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of October, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD141211313200 | The Memorial Hospital | CO | 10/01/97 | 10/01/98 | Sep-99 | 2,166.30 | 162.47 | 108.32 | 1,895.51 |
| NPD1412195 | J&R Emerg Med Grp of FL | FL | 08/13/97 | 01/01/98 | 97-98 | (14,820.00) | (1,111.50) | (741.00) | (12,967.50) |
| NPD1412195 | J&R Emerg Med Grp of FL | FL | 08/13/98 | 01/01/98 | 98-99 | 279,303.00 | 20,947.73 | 13,965.15 | 244,390.13 |
| NPD1412195 | J&R Emerg Med Grp of FL | FL | 08/13/99 | 01/01/98 | 99-00 | 309,908.00 | 23,243.10 | 15,495.40 | 271,169.50 |
| | Total October Collection | | | | | 576,557.30 | 43,241.80 | 28,827.87 | 504,487.64 |

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
For the Collection Month of November, 1999

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPB1139660 | Hadley Memorial Hospital | DC | 07/01/98 | | Jun-99 | 13,264.62 | 1,326.46 | 663.23 | 11,274.93 |
| NPD1412198 | Southern Management Service | FL | 11/01/98 | | 8/1/99-8/9/99 | 1,460.95 | 146.10 | 73.05 | 1,241.81 |
| NPD1412008 | Nosralollah Ghaemmaghami MD | MS | 10/09/99 | | 9/99-9/00 | 12,902.00 | 1,935.30 | 645.10 | 10,321.60 |
| NPB0139657 | Brea Comunity Hospital | CA | 07/01/97 | | May-98 | 12,106.91 | 1,271.23 | 605.35 | 10,230.34 |
| NPB0139657 | Brea Comunity Hospital | CA | 07/01/97 | | Jun-98 | 12,106.91 | 1,271.23 | 605.35 | 10,230.34 |
| | Total November Collection | | | | | 51,841.39 | 5,950.31 | 2,592.07 | 43,299.01 |

SCPIE - 100% Quota Share
RNRS Ref # 63H Effective 10/1/98 to 9/30/99
Premium Bordereau
Collection for 12/1/99 through 12/31/2000

| Reliance Policy # | Insured Name | State | Policy Effective | Policy Expiration | Premium Month | Gross Premium | Broker Comm | 5% Front Fee Due Reliance | Net Amount Retained by AHI |
|---|---|---|---|---|---|---|---|---|---|
| NPD1412004 | Westport Senior Living | FL | 08/09/99 | | 11/00 - 2/00 | 69,732.00 | 10,459.80 | 3,486.60 | 55,785.60 |
| NPD1412008 | Nosralollah Ghaemmaghami MD | MS | 10/09/99 | 01/01/00 | Cx 8/2/00 | (2,090.00) | (313.50) | (104.50) | (1,672.00) |
| NPD1412006 | Westport Senior Living | FL | 08/09/99 | | 2/00 - 5/00 | 69,732.00 | 10,459.80 | 3,486.60 | 55,785.60 |
| NPD1412006 | Westport Senior Living | FL | 08/09/99 | 10/01/98 | 5/00 - 8/00 | 69,732.00 | 10,459.80 | 3,486.60 | 55,785.60 |
| NPD1412006 | Westport Senior Living | FL | 08/09/99 | 09/01/98 | 8/00 - 8/00 | 11,463.00 | 1,719.45 | 573.15 | 9,170.40 |
| | | | | | | | 0.00 | 0.00 | 0.00 |
| | Total Collection - 12/99 to 12/00 | | | | | 218,569.00 | 32,785.35 | 10,928.45 | 174,855.20 |

5 of 6

Exhibit C

| | Total | 2,077,337.83 | 178,212.57 | 103,866.89 | 1,795,258.37 |
| | Proof | 2,077,337.83 | 178,212.57 | 103,866.89 | 1,795,258.37 |

Total from 12/98 to 12/00

6 of 6

## **EXHIBIT D**

## **List of Litigation and Claims**

## EXHIBIT D

### LIST OF LITIGATION AND CLAIMS

**CASES SET FOR TRIAL:**

| | |
|---|---|
| File No.: | CR000367 (Florida) |
| Insured: | Greynolds Park Manor, Inc. |
| Claimant: | Mary Redding (deceased) |
| D/Incident: | 3/25/98 |
| Trial Date: | 3/4/02 |

| | |
|---|---|
| File No.: | CR000409 (Florida) |
| Insured: | Greynolds Park Manor, Inc. |
| Claimant: | Louis Peterson |
| D/Incident: | 7/27/98 |
| Trial Date: | 1/14/02 |

| | |
|---|---|
| File No.: | CR000413 (Texas) |
| Insured: | Mesquite Comm. Hospital |
| Claimant: | Lloyd Vance |
| D/Incident: | 6/19/99 |
| Trial Date: | 2/4/02 |

| | |
|---|---|
| File No.: | CR000084 (Florida) |
| Insured: | Jose R. Azaret, M.D. |
| Claimant: | Onely Cairo (minor) |
| D/Incident: | 4/11/97 |
| Trial Date: | 2/18/02 |

| | |
|---|---|
| File No.: | CR000105 (Florida) |
| Insured: | Ernesto Valdez, M.D. |
| Claimant: | Baby Boy Cristino |
| D/Incident: | 5/21/97 |
| Trial Date: | 2/4/02 |

| | |
|---|---|
| File No.: | CR000377 (Tennessee) |
| Insured: | Edward Pelote, M.D. |
| Claimant: | Courtney Hines (minor) |
| D/Incident: | 4/10/99 |
| Trial Date: | 1/8/02 |

## CASES SET FOR MEDIATION:

| | |
|---|---|
| File No.: | CR000106 (Florida) |
| Insured: | Baptist Hospital of Miami |
| Claimant: | Ruben Arbelaez |
| D/Incident: | 11/25/96 |
| Mediation Date: | 11/30/01 |

| | |
|---|---|
| File No.: | CR000400 (Florida) |
| Insured: | Emerald Healthcare, Inc. |
| Claimant: | Martha Sazoff (dec'd) |
| D/Incident: | 7/25/99 |
| Mediation Date: | 11/7/01 |

D-2

## REMAINING CASES IN DISCOVERY:

| | |
|---|---|
| File No.: | CR000389 (Tennessee) |
| Insured: | J J & R Emergency Medical Group |
| Claimant: | Courtney Hines (minor) |
| D/Incident: | 4/10/99 |

| | |
|---|---|
| File No.: | CR000397 (Kentucky) |
| Insured: | Keith Clifton, M.D. |
| Claimant: | Teresa Bowling |
| D/Incident: | 5/11/99 |

| | |
|---|---|
| File No.: | CR00032 (Florida) |
| Insured: | Baptist Hospital of Miami |
| Claimant: | Abadia Adames |
| D/Incident: | 4/9/96 |

| | |
|---|---|
| File No.: | CR00065 (Florida) |
| Insured: | Baptist Hospital of Miami |
| Claimant: | Lydia Ojeda |
| D/Incident: | 2/14/97 |

| | |
|---|---|
| File No.: | CR00078 (Florida) |
| Insured: | Baptist Hospital of Miami |
| Claimant: | Courtney Crossan |
| D/Incident: | 10/4/94 |

| | |
|---|---|
| File No.: | CR00095 (Florida) |
| Insured: | Baptist Hospital of Miami |
| Claimant: | Glenn Simmons |
| D/Incident: | 5/1/96 |

| | |
|---|---|
| File No.: | CR000155 (Florida) |
| Insured: | South Miami Hospital, Inc. |
| Claimant: | Julie Padron |
| D/Incident: | 4/29/97 |

| | |
|---|---|
| File No.: | CR000232 (Florida) |
| Insured: | Greynolds Park Manor |
| Claimant: | Gerald Henfield |
| D/Incident: | 1/5/97 |

| | |
|---|---|
| File No.: | CR000271 (Florida) |
| Insured: | Palm Springs General Hospital |
| Claimant: | Missouri Diaz |
| D/Incident: | 11/23/97 |

D-3

File No.:        CR000355 (Florida)
Insured:        Greynolds Park Manor, Inc.
Claimant:       Rose Messano (deceased)
D/Incident:     6/1/98

File No.:        CR000366 (Florida)
Insured:        The Retreat
Claimant:       Tyrone Davis
D/Incident:     5/6/96

File No.:        CR000394 (Florida)
Insured:        Palm Springs General Hospital
Claimant:       Yolanda Hernandez (deceased)
D/Incident:     1/21/98

File No.:        CR000401 (Florida)
Insured:        Palm Springs General Hospital
Claimant:       Lourdes Landis
D/Incident:     4/30/98

File No.:        CR000403 (Florida)
Insured:        Emerald Healthcare, Inc.
Claimant:       Mildred Thomas (dec'd)
D/Incident:     9/1/98

File No.:        CR000404 (Florida)
Insured:        Westport Senior Living
Claimant:       Eddie Hill, Sr. (dec'd)
D/Incident:     8/9/99

File No.:        CR000405 (Florida)
Insured:        Emerald Healthcare, Iinc.
Claimant:       Timothy Battles (dec'd)
D/Incident:     9/1/98

File No.:        CR000408 (Florida)
Insured:        Westport Senior Living
Claimant:       Ernestine Crozier
D/Incident:     6/8/00

File No.:        CR000423 (Florida)
Insured:        Emerald Healthcare, Inc.
Claimant:       Fullmer Folson Ellis (dec'd)
D/Incident:     8/6/99

File No.:      CR000425 (Florida)
Insured:       Southern Management Services
Claimant:      Hazel Stark
D/Incident:    6/23/99

File No.:      CR000425 (Florida)
Insured:       Westport Senior Living Investment
Claimant:      Hazel Stark
D/Incident:    7/16/00

File No.:      CR000055 (Florida)
Insured:       Leon E. Tejidor, M.D.
Claimant:      Solanlly Orozco (minor)
D/Incident:    10/25/96

File No.:      CR000090 (Florida)
Insured:       Leon E. Tejidor, M.D.
Claimant:      Courtney Crossan (minor)
D/Incident:    4/24/97

File No.:      CR000396 (Florida)
Insured:       Albert Bartholomew, M.D.
Claimant:      Ronnie Durham
D/Incident:    1/31/00

File No.:      CR000267 (Washington, DC)
Insured:       Hadley Memorial Hospital
Claimant:      Harry Billinger
D/Incident:    1/12/98

File No.:      CR000370 (Florida)
Insured:       Greynolds Park Manor, Inc.
Claimant:      Coretha Williams (dec'd)
D/Incident:    10/6/97

File No.:      CR000378 (Florida)
Insured:       Southern Management Services
Claimant:      Olga Corrales (dec'd)
D/Incident:    2/17/99

File No.:      CR000387 (Florida)
Insured:       Southern Management Services
Claimant:      Martha Gregory
D/Incident:    6/16/99

D-5

File No.:       CR000390 (Florida)
Insured:        Emerald Healthcare, Inc.
Claimant:       Helen Sharkey
D/Incident:     9/28/98

File No.:       CR000391 (Florida)
Insured:        Emerald Healthcare, Inc.
Claimant:       Leo J. Garro (dec'd)
D/Incident:     6/7/99

File No.:       CR000408 (Florida)
Insured:        Westport Senior Living Investment
Claimant:       Ernestine Crozier
D/Incident:     6/8/00

File No.:       CR000410 (Florida)
Insured:        Westport Senior Living Investment
Claimant:       Johnny Templeton
D/Incident:     8/16/99

File No.:       CR000412 (Florida)
Insured:        Southern Management Services
Claimant:       Reedy Buchholz
D/Incident:     11/1/98

File No.:       CR000415 (Florida)
Insured:        Southern Management Services
Claimant:       Gladys Crews
D/Incident:     11/1/98

File No.:       CR000416 (Florida)
Insured:        Mesquite Comm. Hospital
Claimant:       Pamela Allen
D/Incident:     11/11/98

File No.:       CR000417 (Florida)
Insured:        Westport Senior Living Investment
Claimant:       Connie Worthington (dec'd)
D/Incident:     4/28/00

File No.:       CR000421 (Florida)
Insured:        Southern Management Services
Claimant:       Herbert Towner (dec'd)
D/Incident:     1/1/99

D-6



January 16, 2002

The Office of Liquidations, Rehabilitations and Special Funds
5 Hanover Square
New York City, NY 10004
Attention: Statutory Liquidator for Reliance

Ladies and Gentlemen:

We previously wrote to you on November 14, 2001 (the "Letter") concerning a proposed transaction whereby Reliance Insurance Company would be relieved of all obligations under the SCPIE Companies Hospital Professional Program (the "Program"), which SCPIE would assume (the "Novation"). We understand based on conversations with your representative that you are not now prepared to proceed with such a transaction. We request that you promptly reconsider this position.

We direct your attention to the language of Article XVIII of the Reinsurance Agreement identified in exhibit A to the Letter, which states: "The reinsurance shall be payable by the Reinsurer to [Reliance] or to its liquidator, ... except ... where the Reinsurer with the consent of the direct insured or insureds have assumed such policy obligations of [Reliance] as direct obligations of the Reinsurer to the payees under such policies and in substitution for the obligations of [Reliance] to such payees." We believe this language authorizes the Novation by agreement between us and the insureds. We seek your acquiescence in order that we may simultaneously effect an appropriate and orderly unwinding of the related other agreements between us with respect to the Program listed on exhibit A to the Letter.

We believe that further delay by you in this matter may have seriously adverse effects on the parties and the defense of pending claims. We prefer to avoid the necessity of legal proceedings to accomplish that which is plainly in all parties' interest, and look forward to your early and favorable reply. Thank you for your attention to this urgent matter.

Very truly yours,

*Joseph P. Henkes*

Joseph P. Henkes
Senior Vice President and Secretary

cc:    Christopher M. Maisel, Esq.

The SCPIE Companies

American healthcare
Indemnity Company

American Healthcare
Specialty Insurance
Company

SCPIE Holdings inc.

SCPIE Indemnity
Company

SCPIE Insurance
Services, Inc.

SCPIE Management
Company

SCPIE Management
Services, Inc.

1888 Century Park East
Suite 800
Los Angeles, California
90067-1712

310/551-5900
800/982-5549

www.scpie.com